HOUSTON & TEXAS CENTRAL RAILROAD COMPANY V. TURNER BURNETT ET AL.

Decided February 15, 1908.

**1.—Personal Injuries—Section Foreman—Evidence—Charge.**

In a suit by the surviving wife and children for damages for the death of a section foreman on a railroad caused by injuries received while attempting to remove a handcar from the track before an approaching train, evidence considered, and held to support a finding by the jury that the deceased was not guilty of contributory negligence or of rash and reckless conduct, under all the circumstances, in attempting to remove said car, and the charge of the court correctly submitted the issues made by the pleading and the evidence on that issue.

**2.—Railroads—Section Foreman—Violation of Rules—Issue.**

The issue being whether or not a section foreman had violated the rules prescribed by the defendant company for the guidance and government of its section men in the performance of their duties, charge considered, and held

to properly submit the question as one of fact for determination by the jury, and the evidence supported a finding by the jury that there was no violation.

**3.—Same—Road Crossings—Signals—Statute Construed.**

The provision of the statute requiring that the whistle shall be blown and the bell rung when a locomotive engine approaches the crossing of any public road or street, is intended for the protection of those engaged in the performance of their duties upon the track as well as for the protection of persons who may be about to cross the track.

**4.—Same—Operation—Duty of Lookout.**

It is the duty of operatives of railroad trains to keep a general lookout, and to exercise ordinary care to discover persons rightfully on the track at such places as persons may be expected to be, and a failure to keep such lookout renders the company liable for injuries resulting therefrom in the absence of contributory negligence on the part of the person injured.

**5.—Discovered Peril—Evidence.**

In a suit for damages for the death of a section foreman while attempting to remove a handcar from the track while a train was approaching, evidence considered, and held to raise the issue of discovered peril, and to require the submission of such issue to the jury.

**6.—Railroads—Passenger Train—Freight Engine—Harmless Error.**

In a suit for damages for the death of a section foreman struck by a passenger train, the admission of evidence that the train was drawn by a freight engine and that the engineer was a freight engineer, if error, was harmless in view of evidence that there was practically no difference in the construction of freight and passenger engines; that no greater skill was required to operate one than the other, and that the engineer was not lacking in skill in the operation of either.

Appeal from the District Court of Collins County.   Tried below before Hon. J. M. Pearson.

*Baker, Botts, Parker & Garwood, Smith & Wilcox* and *M. H. Garnett* for appellant.—The verdict is unsupported by the evidence, in this: The undisputed evidence in the case shows that the deceased, after discovering the approaching train, had reached a place of safety, and that he voluntarily returned to the track immediately in front of the rapidly approaching train, which could not have been stopped. If, therefore, it be conceded that there was any negligence upon the part of the defendant railway company, the act of the deceased was of such a reckless character that it will be declared negligence per se, and the proximate cause of his death.   Bennett v. St. L. & S. W. Ry., 36 Texas Civ. App., 459; International & G. N. Ry. v. Hester, 72 Texas, 40; International & G. N. Ry. Co. v. McVey, 81 S. W. Rep., 998; Houston & T. C. Ry. Co. v. O'Donnell, 99 Texas, 636; Ridley v. M. & O. R. R., 86 S. W. Rep., 608; Donohoe v. Wabash, St. L. & P. Ry. Co., 83 Mo., 560; 1 Sher. Red., sec. 85, note 6; 1 Thomp. on Neg., sec. 199.

The verdict of the jury is not supported by the evidence, but is contrary to the evidence in this: The proof shows without controversy that the deceased violated the rules of the company in failing to stop his car at a safe distance from the cut and send a flagman ahead for the purpose of protecting the car, and that this failure was the proximate cause of the collision.   Pilkinton v. Gulf,

C. & S. F. Ry., 70 Texas, 229; International & G. N. Ry. v. Brice, 100 Texas, 203; Merchants & Planters Oil Co. v. Burns, 96 Texas, 579; San Antonio & A. P. Ry. Co. v. Wallace, 76 Texas, 639; Galveston, H. & S. A. Ry. Co. v. Adams, 94 Texas, 106; Louisville & N. Ry. Co. v. Markee, 103 Ala., 160; Francis v. K. C., S. J. & C. B. Ry., 19 S. W. Rep., 935; Labatt Master & Servant, art. 211, page 468; 5 Thomp. on Neg., sec. 5530, and note 20.

The verdict is not supported by the evidence in this: There is no proof of any act of negligence on the part of the defendant or of the servants of the defendant in managing its train. Missouri, K. & T. Ry. v. Rogers, 91 Texas, 59; International & G. N. Ry. v. Neff, 87 Texas, 308; St. Louis & S. W. v. Highnote, 86 S. W. Rep., 923; Looney v. Metropolitan Ry., 200 U. S., 487; L. ed., book 50, page 569; Sher. & Redf. on Neg. (5th ed.), sec. 85, page 124, note 6.

The charge is erroneous and misleading in this: Article 4507 of the Revised Statutes applies only to persons who are on the track or about to go on the track at a crossing with the highway and the railroad at grade, and has no reference whatever to the facts of this case. Railway Co. v. Highnote, 86 S. W. Rep., 923; Texas & P. R. Co. v. Shoemaker, 98 Texas, 455; De Walt v. H. E. & W. T. Ry., 22 Texas Civ. App., 403; San Antonio & A. P. Ry. Co. v. Gray, 95 Texas, 428; Louisville & N. Ry. Co. v. Markee, 103 Ala., 160; 15 So. Rep., 515; Louisville & N. Ry. Co. v. Hall, 87 Ala., 718; 4 L. R. A., 713, 714; Alabama G. S. R. Co. v. Hawk, 72 Ala., 112; Nashville, C. & St. L. R. Co. v. Hembree, 85 Ala., 481; International & G. N. Ry. v. Graves, 59 Texas, 332; Missouri, K. & T. Ry. v. Owens, 75 S. W. Rep., 579.

The charge is erroneous because it instructs the jury that it was Engineer Beckwith's duty to keep a proper lookout and sound the whistle. It was the duty of the defendant to do those things, and it had the right to select the servant by whom that duty should be performed—the engineer or the fireman. Houston & T. C. Ry. Co. v. Stewart, 92 Texas, 545.

The court erred in permitting the plaintiffs to prove that the engine pulling the train in question was one which had been used in pulling freight trains, and that it was a freight engine, because: (a) There is no issue raised in the pleadings as to the character of the engine, as to its efficiency or kind. (b) The evidence objected to is entirely without any pleadings to support it. (c) It is incompetent, irrelevant and prejudicial. Hall & Jones v. Jackson, 3 Texas, 309; Cooper v. Loughlin, 75 Texas, 527; Western U. Tel. Co. v. Smith, 88 Texas, 9; Moody & Co. v. Rowland, 100 Texas, 363; Robinson v. Moore, 1 Texas Civ. App., 93.

*R. C. Armstrong, Abernathy & Mangum* and *Crane & Gilbert,* for appellees.—Whether the conduct of deceased was so rash or reckless as to preclude recovery for his death was a question of fact for the jury to pass upon, and it was properly submitted to them by the court. San Antonio & A. P. Ry. v. Gray, 95 Texas, 424; Becker v. L. & N. Ry., 61 S. W. Rep., 997 (Ky.).

Where the engineer, as his engine was entering a cut on a curve,

saw the deceased and his handcar on the track in time to have stopped his train, it was criminal negligence not then to use every effort to stop his train, instead of waiting until it went through the cut and around the curve before attempting to stop.   Texas & P. Ry. v. Watkins, 88 Texas, 24; International & G. N. Ry. v. McVey, 81 S. W. Rep., 995, 997-8; Richmond & D. Ry. v. Powers, 149 U. S., 43 (L. ed., 37, p. 642).

As to employes rightfully on the track where the operatives may expect them to be, the operatives owe them the general duty of lookout and warning, and such employes may rely upon the discharge of statutory duties by the operatives; and it was proper for the court to submit to the jury as a question of fact, as was done in this case, whether or not a compliance with the statutory duty to whistle at grade crossings would have warned the section men of the approaching excursion train, and whether a failure to do so was negligence under the facts in evidence.   International & G. N. Ry. v. Gray, 65 Texas, 32; San Antonio & A. P. Ry. v. Brock, 35 Texas Civ. App., 155.

Train operatives not only owe the general duty to those rightfully on the track of keeping a lookout and of exercising ordinary care to discover them, but they must use every effort consistent with the safety of the train to avoid injury after their discovery.   St. Louis S. W. Ry. v. Jacobson, 28 Texas Civ. App., 150; International & G. N. R. R. v. McVey, 81 S. W. Rep., 996; Texas & P. Ry. v. Watkins, 88 Texas, 24, 25.

Whether or not deceased was guilty of contributory negligence or of such rash or reckless act as to preclude recovery for his death, were questions of fact which were properly submitted to the jury. San Antonio & A. P. Ry. v. Gray, 95 Texas, 427; International & G. N. R. R. v. McVey, 81 S. W. Rep., 995; DePalacios v. Rio Grande Ry., 45 S. W. Rep., 612; St. Louis S. W. Ry. Co. v. Jacobson, 28 Texas Civ. App., 150.

RAINEY, CHIEF JUSTICE.—J. E. Burnett was struck and killed by a train of the Houston & Texas Central Railroad Company, and this action was brought by his wife, Eudora Burnett, for herself and as next friend of their children, Turner and Rayburn Burnett, to recover against said railroad company damages that accrued to them by reason of such killing.

The defendant answered by general and special demurrers, general denial, assumed risk, contributory negligence, and specially that J. E. Burnett was an experienced railroad man and section foreman of defendant, and sets out various rules of the company made for the safety of its employees and which had been violated by Burnett, and also sets out various acts of Burnett, unnecessary to mention here, that caused his death and which exonerated defendant from liability.   A trial resulted in a verdict and judgment for plaintiffs from which this appeal is taken.

The deceased at the time of his death was section foreman of defendant in the discharge of his duty as such.   He and his crew of six men were en route upon a handcar to a point upon the track

where they were to engage in cutting grass from the right of way. They had reached a point about two miles south of McKinney early in the morning when an excursion train was seen approaching, running at a rate of speed variously estimated from thirty to sixty miles an hour. The men immediately left the handcar and attempted to remove it from the track. The greater portion of the car was removed, but the flange of one wheel hung upon a rail and all of the men, except one, abandoned it. Burnett, who had gotten off on the opposite side, seeing the condition of the car, sprung upon the track to assist in removing the car and was almost immediately struck by the train and killed.

The first assignment of error presented by appellant is that, "The verdict of the jury is contrary to the law and the evidence, and there is no evidence tending to support the same in the following particulars: (a) The undisputed proof is that the deceased, after he had reached a place of safety, voluntarily placed himself in a place of danger by going back upon the track immediately in front of the approaching train, and was thereby killed, and that in so doing he was not only guilty of a negligent act, but also guilty of a rash and reckless act, which was the sole cause of his death; (b) The undisputed proof shows that deceased failed to comply with the rules of the company, and that he was guilty of negligence in not sending a flagman ahead of the handcar before going upon the dump or approaching the curve and going upon it, and this act was the proximate cause of the accident; (c) The undisputed proof shows that the defendant's servants in charge of the train blew the whistle at all of the crossings and curves, and that they were keeping a proper lookout and used all the means within their command to prevent the collision as soon as they discovered the presence of the deceased and his handcar upon the track; (d) The undisputed proof shows that the deceased was guilty of a rash and reckless act in going back upon the track immediately in front of the rapidly approaching train, and that his act in so doing was the proximate and immediate cause of his death; (e) The undisputed proof shows that when he did jump back upon the track in front of the engine he turned his face away from the train and remained in such position until he was struck, and that in so doing he was guilty of gross negligence." In this connection a charge was asked and refused, in effect, that the verdict is not supported by the evidence.

The first proposition is that, "the undisputed evidence in this case shows that the deceased, after discovering the approaching train, had reached a place of safety, and that he voluntarily returned to the track immediately in front of the rapidly approaching train, which could not have been stopped. If, therefore, it be conceded that there was any negligence upon the part of the defendant railway company, the act of the deceased was of such a reckless character that it will be declared negligence *per se,* and the proximate cause of his death."

When the train was first discovered approaching by the section crew the handcar was stopped and Burnett said: "Boys, lift her off

bodily." He then got off on the east side and took off the grub box and placed it down by the track. By that time the men had removed the north end of the car, but the east wheel hung on the rail and all the men left the car, but one, Camp. Burnett then jumped on the track and he and Camp took a lift, trying to move the car, when the train struck and killed him. It also struck the handcar, knocking it off the track, and injured another of the crew. It was Burnett's duty to remove obstructions from the track. The train was running very fast, and whether or not under the circumstances he was guilty of negligence was properly left to the jury.

On this phase of the case the court charged the jury as follows: "In order to entitle plaintiffs to recover, among other things, it devolves upon them to show by a preponderance of the evidence, that defendant's engineer in charge of the train was guilty of negligence in running said train against Burnett, and to further show that the deceased, J. E. Burnett, in remaining on or near said defendant's track while the train was rapidly approaching, was not guilty of contributory negligence, and in this connection you are instructed, if you find and believe from the evidence that the deceased saw defendant's train approaching in time to have gotten off the track to a place of safety, and you further·believe from the evidence that the deceased remained at or near said track for the purpose of removing the handcar from said track, with a view thereby of preventing the wreck or derailment of the train, and thereby saving the lives of the passengers on said train, then if you believe such was his motive, his conduct in so remaining would be excusable, unless you further believe from the evidence that in so placing himself in a position of peril he was reckless and rash, as it would appear to a person of ordinary prudence, under all the facts and circumstances of the case, and if you find and believe from the evidence that his conduct, when so viewed, was rash and reckless, then he·would be guilty of contributory negligence." This paragraph of the charge is attacked and the proposition submitted is that there was no evidence showing that the purpose of Burnett in going on the track at that time was to save life or to avoid a breach of the rules, and that a rash and reckless exposure of life is not justifiable in an attempt to protect the life of another, even as against the negligence of a third party.

It is difficult for a person standing on the track to tell the speed at which a train is approaching and to measure the distance and tell the time when it will reach him. The stopping of the handcar, as it was moving slowly, and the attempt in taking it off must have consumed but a few moments, and Burnett, knowing that the handcar ought to be removed from the track to prevent the chance of a wrecking of the train, the inference was fairly deducible that Burnett's motive was to prevent the derailment of the train and thereby save the lives of passengers on said train, and the court did not err in presenting this feature of the case to the jury, as well as whether or not the act was rash and reckless. International & G. N. Ry. v. McVey, 81 S. W. Rep., 991; San Antonio & A. P. Ry. v. Gray,

95 Texas, 424. The evidence was sufficient to support the verdict on this issue.

It is further contended that the verdict is not supported by the evidence for the reason that the proof shows without controversy that the deceased violated the rules of the company in failing to stop his car at a safe distance from the cut and send a flagman ahead for the purpose of protecting the car, and that this failure was the proximate cause of the collision.

Several rules of the company were introduced, which, in substance, are: Rule No. 152 provides that: "All men at work on the track or bridges must bear in mind that in operating the road under telegraphic orders a train may pass at any moment. They must keep a sharp lookout for trains from either direction, and must not assume that a train may not come for any certain time, nor act on the assurance of any person to that effect, but will at all times protect themselves with proper signals, as per Rules Nos. 149, 154 and 155... Foremen must know that their gangs are always supplied with proper signals, flags, lanterns and torpedoes, and are thoroughly instructed as to their use." Rule 149 referred to prescribes what signals are to be used, and how the torpedoes are to be placed. Rule 155 prescribes that when it is necessary for trains to reduce speed a green flag must be set on the side of the track at least 90 rails or fifteen telegraph poles from the place on the engineer's side in each direction, as a caution to approaching trains. Rule 102 reads as follows: "Foremen and all others, in all branches of the Maintenance of Way service, will be governed by all the rules of the company relating to the protection of life and property, and prescribing the precautions to be observed for the safe operation of trains." Rule 110 prescribes that every employe must be conversant with the rules. Rule 111 prescribes that none will be excused for a violation of the rules. Rule 112 prescribes that if an employe is in doubt as to the meaning of the rule he must make application to proper authority for an explanation, and will not be excused on account of ignorance. Rule 164 provides that handcars must be run with great caution at all times, and particularly at night and in fogs. Frequent stops to listen for approaching trains must be made, and on grades flagmen must be sent around all curves as an additional precaution.

The conclusion is fairly deducible from the evidence that the section crew on their way to work that morning observed due care; that they stopped and listened for trains, and that they had not reached a place where, under the rules, they were required to send out a flagman or in any manner violated the rules laid down by the company for their safety. The question whether or not the rules were violated was properly submitted to the jury and the evidence supports the finding that there was no violation.

The court charged the jury, in effect, that it was the duty of the engineer in charge of the train to blow the whistle eighty rods before reaching a public road crossing at grade north of where deceased was at the time he was struck by the engine, and south of McKinney,

etc., and if there was a failure to blow and the failure to blow was an act of negligence, and that if deceased was near enough to hear such whistle had it been blown, and such would have averted the injury, to find for plaintiff.

The evidence shows that there were several grade crossings between McKinney and the point where the handcar was struck, about one and one-half or two miles south of McKinney. There was one overhead crossing about 89 feet north of where the handcar was struck. There was sufficient evidence to sustain the finding that there was no whistle sounded at the grade crossings.

The contention is made that the charge is misleading in that the statute applies only to persons who are on the track or about to go on the track at a crossing with the highway and the railroad at grade, and has no reference whatever to the facts of this case. We do not concur in this contention. The section crew were rightfully on the track, regularly in the discharge of their duty, and they had the right to expect the operatives of the train to perform the duties required of them in such operation. While it was the duty of the section crew to look out for their own safety, it was also the duty of the train operatives to keep a lookout for them and conform to the regulations prescribed that they might not injure other employes. It is the duty of section men to stop and listen for approaching trains, and the blowing of the whistle at crossings is one means by which they can ascertain the approach of the train. The statute prescribes the blowing of whistles at the crossings, and there is no reason why any person, lawfully using the track, should not rely on the operatives of trains complying with that duty. The court did not charge the failure to give the statutory signals to be negligence *per se,* but left the question to be determined by the jury under the evidence, and the evidence warranting the charge there was no error in giving it. International & G. N. Ry. v. Gray, 65 Texas, 32; San Antonio & A. P. Ry. v. Brock, 35 Texas Civ. App., 155.

The eighth paragraph of the charge is attacked as misstating the law and upon the weight of the evidence. It reads as follows: "It is the duty of an engineer in charge of a locomotive engine to use ordinary care in discovering the employes rightfully on the track by keeping a reasonable lookout for that purpose, and if you find and believe from the evidence on the occasion when Burnett was killed, Beckwith, the engineer in charge of defendant's train, did not discover deceased in time to have prevented the collision by stopping the train, and you further find and believe from the evidence that said engineer in charge of said train did not exercise ordinary care in keeping a proper lookout for employes and objects on the track, and you further find that if he had exercised such care as an ordinarily prudent person would have done, he would have discovered deceased in time to have stopped the train and thereby prevented the death of Burnett, and you further believe from the evidence that said engineer's failure to keep a proper lookout, if you find he so failed, was an act of negligence and the proximate cause of Burnett's death, you will find for the plaintiffs and assess their

damages as hereinafter instructed, unless you find for the defendant under subsequent instructions."

The proposition is that it was the duty of the section men to keep out of the way of trains and that the undisputed evidence shows that the operatives of the train used the means in their power to stop the train as soon as the section crew was discovered. The evidence raised the issue as to whether the operatives of the train used care to discover the situation of the section crew in time to stop the train before reaching them, and the verdict of the jury was warranted by the evidence.

The law as announced in St. Louis S. W. Ry. Co. v. Jacobson, 28 Texas Civ. App., 150, in which we concur, is applicable to this case. Mr. Justice Gill, speaking for the court, said: "We understand the law to be that as to persons rightfully on the track, where the operatives of the train may expect them to be, the operatives owe the general duty of lookout, and must exercise ordinary care to discover them, as well as to avoid injury after the peril is discovered. A violation of this duty would not render the company liable if the person thereby injured was guilty of contributory negligence in failing to exercise reasonable care for his own safety, but the law imposes the duty nevertheless, and the company in such case is not acquitted of blame, but recovery is denied because the injured party is also in fault. To illustrate: Suppose deceased, in the lawful discharge of his duty of inspection after the passage of each train, had been upon the bridge in question, and had by some means become disabled so that he could not leave it. Suppose the operatives of the train could, by the exercise of a reasonably careful lookout, have discovered him in time to avoid injuring him. Can it be doubted that in such a case the company would be liable?" Texas & Pac. Ry. Co. v. Watkins, 88 Texas, 24; Houston & T. C. Ry. Co. v. Sympkins, 54 Texas, 615; Galveston City Ry. Co. v. Hewitt, 67 Texas, 479.

We do not think there is any merit in the contention that the effect of the charge "was to tell the jury that the rules prescribed for the warning of the men at work on the section were insufficient for this purpose, and were unreasonable, and in effect told the jury to disregard the evidence of the rules." There is no intimation in the charges that the rules of the defendant were insufficient and unreasonable for their safety and that they could disregard the evidence in relation thereto. In fact there is no reference to the rules whatever. The charge relates to the use of the care the operatives of the train should exercise for the protection of those lawfully using the track. The violation of the rules is not necessarily negligence *per se,* and the court correctly charged the jury in regard to them. The court also gave a charge on contributory negligence, which counteracted any supposed instruction in this charge to disregard the rules.

Nor was it error to charge that it was the duty of the *engineer* in charge of the locomotive to exercise care by keeping a lookout for persons rightfully on the track. The engineer in charge of the locomotive has the control of the movement of the train, and it was

his duty to keep a lookout, and there is no contention that any other employe used or was in a better position to use greater care than he to do so. Under the circumstances we see no harm that resulted to defendant in this respect. This paragraph of the charge was called for by the evidence and there was no error in giving it.

The court gave a correct charge on discovered peril. But it is contended that the evidence raised no issue upon the question of discovered peril in time to have stopped the train, and that deceased, after reaching a place of safety, where defendant's employes might rightfully expect him to remain, voluntarily returned to the track immediately in front of the moving train, at a time when no human agency could have stopped it.

The testimony shows that the handcar was at a point on the track 89 feet south of a curve on a slight grade, the grade descending south. The curve was in a cut. The evidence tended to show that an engineer seated in his cab could have seen the men on the handcar at a point sufficiently distant to have stopped the train had the operatives used proper exertion. There was evidence also that there was no warning given by, or effort made to stop, the train, until just before the train struck the deceased and too late to have prevented striking him, when the hazard signals were given and the emergency brakes applied. The time that Burnett remained off the track was so short and the circumstances surrounding the transaction were such that it would not affect the question of discovered peril. When he leaped on the track the handcar had not been entirely removed from the track, and one of the section hands was then still working to remove it and the train crew evidently saw the situation, and if their duty to stop the train arose, that duty had arisen before Burnett went back on the track. We think the charge was authorized by the evidence.

The court permitted plaintiff to prove by witnesses Looney and Farris, that the engine pulling the train was a freight engine and that Beckwith, the engineer, up to that time, had been pulling freight trains. Defendant objected to this evidence on the ground that the same had not been plead, and that it was incompetent, irrelevant and prejudicial to it. The proof showed that the engine was a freight engine and that Beckwith had occasionally pulled a passenger train, and that there was practically no difference between the construction of a freight engine and a passenger engine. There was no evidence that any greater skill or capacity was required to operate one than the other, or that Beckwith was lacking in capacity to operate the one or the other. We can not see how this evidence was prejudicial to the defendant, and its admission, if error, was harmless.

The verdict was not excessive.

Other errors to the charge are assigned. Numerous ones are assigned to the refusal of special charges. Those refused that have merit were sufficiently covered by the main charge, and there was no error in refusing those not so covered.

The evidence was sharply conflicting, but there was evidence on

all material points to support the verdict. The charge of the court was a fair and full presentation of all the issues. The judgment is affirmed.

*Affirmed.*

Writ of error refused.