### DICKINSON v. GRANBERY.

No. 9150—Opinion Filed Aug. 27, 1918.

(174 Pac. 776.)

(Syllabus.)

1. Negligence — "Reasonable Prudence" — "Ordinary Care"—Question for Jury.

There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent and what shall constitute ordinary care under any and all circumstances. The terms "ordinary care," "reasonable prudence," and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case may, under different circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It

is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them, that the question of negligence is ever considered as one of law for the courts.

2. Master and Servant — Death of Section Foreman—Negligence of Defendant.

In an action for the death of a railroad section foreman, who was killed while attempting to remove his motor car from the track to prevent its being run into by a passenger train, where the evidence shows that at the time and place of injury there was a very dense and unprecedented fog, and that the engineer and crew of the passenger train failed to ring the bell, sound the whistle, or burn a headlight in approaching and passing through the fog at the place of the accident, and was running its train at a speed of from 40 to 45 miles per hour, held the evidence sufficient to go to the jury on the question of the primary negligence of the railroad company.

3. Same—Evidence.

The admission of testimony that the engineer and crew of the passenger train failed to blow the whistle or ring the bell at a highway crossing about 200 yards west of the place of the accident was properly admitted as a circumstance bearing on the question of defendant's negligence.

4. Trial—Findings.

Where a railroad company is charged with failing to use ordinary care in several particulars, it will not be permitted to split up the charges into items mentioned in the petition as constituent elements, and ask for a ruling as to each. The court was authorized in leaving the general question of defendant's negligence to the jury where the evidence, viewed as a whole, warranted a finding of negligence.

5. Master and Servant — Injuries to Servant—Intervening Negligence — Question for Jury.

Where negligence on the part of the master is shown, whether the intervening negligence of the person injured is a proximate cause of the injury is a mixed question of law and fact, and is therefore primarily one for the jury to determine under proper instructions. The court will not undertake to settle it in any case where it involves the weighing of conflicting evidence, the balanc-

ing of probabilities, and the drawing of inferences.

**6. Negligence — Contributory Negligence — Comparative Negligence.**

Under the federal Employers' Liability Act (35 Stat. 65) contributory negligence on the part of the employe injured is not a bar to a recovery, but it is the duty of the jury to diminish the damages in proportion to the amount of the negligence attributable to such employe.

**7. Master and Servant — Assumption of Risks—Knowledge of Danger.**

Under the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. 1916. §§ 8657-8665]), the servant assumes all the ordinary risks of his employment which are known to him, or which could have been known by the exercise of ordinary care to a person of reasonable prudence and diligence in like curcumstances. Risks not naturally incident to the occupation, but which arise from the negligence of the master, are not assumed by the servant until he becomes aware of such negligence and of the risk arising therefrom, unless the negilgence and risk are so apparent and obvious that an ordinarily careful person would observe the one and appreciate the other. Whether the risk is an ordinary risk known to the servant, or with knowledge of which he is chargeable, is a question of fact to be submitted to the jury.

**8. Master and Servant—Negligence of Servant—Voluntary Risk of Safety.**

It is not negligence per se for a foreman of a section crew to voluntarily risk his own safety or his own life in attempting to protect the crew and passengers of an approaching train from danger. The law has so high a regard for human life that it will not impute negligence to an effort to preserve it, unless made under circumstances constituting rashness in the judgment of prudent persons.

Error from District Court, Texas County; T. P. Clay, Judge.

Action by Lula May Granbery, administratrix of estate of Watt O. Granbery, against J. M. Dickinson, receiver of the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

R. J. Roberts, C. O. Blake, W. H. Moore, J. E. Dumars, and John L. Gleason, for plaintiff in error.

L. C. Barrett, J. S. Harris, J. N. Browning, and Ledbetter, Stuart & Bell, for defendant in error.

RAINEY, J. This was an action against the receiver of the Chicago, Rock Island & Pacific Railway Company by Lula May Granbery, the personal representative of Watt O. Granbery, an employe of the company, to recover damages for the death of the said Granbery resulting from a collision of a locomotive engine drawing a passenger train between Dalhart, Tex., and Liberal, Kan., and a motorcar on which deceased and a section crew, in his charge as foreman, were riding immediately preceding the accident. The collision occurred in Oklahoma, about 3½ miles west of the town of Goodwell, about 200 yards east of the intersection of a public highway and the railroad company's track. The company was engaged in interstate commerce, and the deceased was a section foreman for said company on the section of the road where he was injured, and at the time of his injury was engaged in his duties as such.

It is agreed by the plaintiff and defendant that the case is therefore governed by the federal Employers' Liability Act. Pederson v. Delaware, Lackawanna & Western R. Co., 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153.

The cause was tried to a jury, resulting in a verdict and judgment for plaintiff in the sum of $8,750, from which judgment the defendant has appealed to this court.

The circumstances of the collision, as shown by the evidence, were substantially as follows: The defendant railroad company's track from Texhoma, Okla., to Liberal, Kan., was a long straight piece of track, and the schedule time of the passenger train was about 35 miles per hour, including stops. When running on schedule time the train that struck the motorcar was due in Goodwell, Okla., at 8:30 o'clock a. m., but on the morning of the accident it was about 20 or 25 minutes late. According to all the witnesses, there was a very dense unusually heavy fog enveloping the track at the time of the collision. As the foggy condition will have an important bearing on the case, we briefly quote from the testimony of some of the witnesses for plaintiff and defendant on this point.

Plaintiff's witnesses:

Sport Hayes: "It was the foggiest morning that I ever saw. The fog was so dense that you could not see a man 150 yards."

D. B. Hayes: "There was a dense fog, and you could not see a man only a short distance away."

George L. Aycock, formerly State Senator: "* * * It was rather foggy that morning.

* * * The sun wasn't shining."

H. E. Merrell: "It was a very heavy fog when we was out when the accident occurred."

Defendant's witnesses:

T. J. Bickall, conductor of the train: "It was very foggy; a very foggy morning in spots."

D. A. Robertson, engineer: "* * * It was quite foggy out of Dalhart to Stevens; that is a station west of Texhoma. * * * The fog lay kind'a hazy and kind'a in little streaks. * * * When we left Texhoma the conditions of the fog was slightly clearing away. It was almost practically clear on leaving Texhoma, but when we got down into the swell and sags between Texhoma and Goodwell occasionally there would be a little bank of fog—a bank or streak that was sagging down pretty close to the ground. When we came over near the place of the accident, a quarter of a mile before that, before we struck the handcar, or motorcar, rather, there was quite a fog bank, the heaviest of any that we found between Texhoma and Goodwell, yet I could see over the bank. It was perfectly daylight, but it was lying down on the ground. * * * When I saw the motorcar I was right in the midst of this dense fog bank. I don't think I could see them over two hundred feet, or somewhere in that neighborhood. * * *"

D. H. Neeley: "The weather was very foggy; the fog was very dense."

J. E. Shelladay, fireman: "We left Texhoma about twenty-two minutes late on our schedule, probably twenty-five and we were running about 40 miles per hour, and it had been very foggy that morning. If I remember right, the engineer had turned the headlight off at Stevens—I don't just recollect. I was busy a good deal of the time, but when we left Texhoma it was pretty clear, practically clear, but when we broke over a hill and entered a low place with a swag we struck heavy banks of fog. * * *".

The deceased, as was his custom, was at the station at Goodwell, with his section crew, on the morning of the accident at about 7 o'clock for the purpose of starting out for the day's work. He was there informed by the station agent that the train was late. After he had left he went back again for the purpose of writing a letter, and then left the second time, going west in the direction from which the passenger train was coming. He warned his crew to look out for the approaching train, and was proceeding very slowly—about two or three miles an hour—and would slow down at short intervals, and he and his men would listen for the expected train. None of the section crew heard or saw the passenger train until it was almost upon them and the deceased was the first one who observed it. In the crew there were two Mexicans and two white laborers besides the deceased. He and one Mexican attempted to get the car off the track, and had succeeded in getting it turned sideways and halfway off when the motorcar was struck. This Mexican was in the middle of the track at one end of the car, and the deceased was at the other end. The impact killed the Mexican immediately and severely injured the deceased, from which injuries he died three days thereafter.

The plaintiff claims that, under the unusual and extraordinary conditions surrounding the collision due to the very dense and unprecedented fog, it was incumbent upon the railroad company to use ordinary care and caution to warn any section men who might be working on or about the track of the approach of the train, and that, in the light of the attendant dangerous conditions, the defendant was negligent in running its train at an excessive speed, in failing to have a headlight burning on said train, and in failing to ring the bell or sound the whistle in running through the fog, and that its failure to take all or any of said precautions was the proximate cause of plaintiff's injuries. The principal contention of counsel for defendant is that the plaintiff has utterly failed to show that the defendant company was guilty of any negligence. There was a sharp conflict in the testimony as to whether the bell was rung or the whistle sounded for the road crossing about 200 yards west of the place where the collision occurred. But it is admitted by counsel for the railroad company that this conflict took this question to the jury, and that the general verdict returned by the jury is conclusive for the purposes of this case, that these alarms were not given. In fact, this is the weight of the testimony. It is not claimed on the part of the railroad company that the whistle was sounded or the bell rung at any other point in approaching the place of collision and in going through the fog at this place. The evidence also discloses that while the headlight was burned on this morning on account of the foggy conditions probably as far as Stevens, that it had been turned off and was not burning just preceding or at the time of the collision. It is also clear from the evidence that the passenger train was going at a rate of speed of not less than 36 miles per hour and probably 45 miles per hour. Mr. Robertson, the

engineer testified that the speed of the train was probably 40 or 45 miles per hour.

In all cases of this character, in determining the liability of the defendant, one of the essential questions to be determined is what duty it owed to the deceased at the time of the injury, and whether there has been a breach of that duty. We are satisfied from the evidence in the record that the collision could not have been avoided by the section crew or by the crew of the passenger train after they came into view of each other. Under ordinary conditions, on this straight track, the speed of the train was not excessive, nor could the failure to burn a headlight or to sound the whistle or to ring the bell for the purpose of warning the section crew have been deemed negligent, because on a clear day and a straight track ordinary care would not have required such precaution before discovering the presence of the crew in a place of danger. It was the duty of the employes in charge of the locomotive passenger train to use ordinary care and caution not to injure any workmen who might be upon the track. What would have been ordinary care under some circumstances would not have been under other circumstances, and in this case, although the railroad company had a right to run its train at the rate of 40 or 45 miles per hour, this right existed only on condition that proper means be taken under the perilous circumstances to protect the workmen or any person who might be expected to be rightfully on the track.

It is well settled by the decisions of the Supreme Court of the United States, and also by the decisions of this court, that where a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was primary negligence on the part of the defendant, the determination of the matter is for the jury. Baltimore & Ohio R. Co. v. Griffith, 159 U. S. 603, 16 Sup. Ct. 105, 40 L. Ed. 274; Grand Trunk Railway Company v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485; Chicago, R. I. & P. Ry. Co. v. Felder, 56 Okla. 220, 155 Pac. 529; St. Louis & S. F. Ry. Co. v. Loftis, 25 Okla. 496, 106 Pac. 824; Harris et al. v. Missouri, K. & T. Ry. Co., 24 Okla. 341, 103 Pac. 758, 24 L. R. A. (N. S.) 858; San Bois Coal Company v Janeway, 22 Okla. 425, 99 Pac. 153; Mean v. Callison, 28 Okla. 737, 116 Pac. 195.

In Grand Trunk Ry. Co. v. Ives, supra, Mr. Justice Lamar, speaking for the court, said:

"There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under any and all circumstances. The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them, that the question of negligence is ever considered as one of law for the court."

It seems to be the theory of the railroad company that it was the absolute duty of the section foreman, under the rules of the company, to protect himself and his crew from all trains that might be on the track, and that the burden was upon him to take all the requisite precautions to avoid a collision with this particular passenger train, which he knew was coming and which he had a right to expect at any time; that no burden whatever rested upon those in charge of the passenger train, and that the company owed the deceased no duty except to avoid injuring him after the discovery of his peril. This is not the law. A similar question was before the Supreme Court of the United States in Chicago, R. I. & P. Ry. Co. v. Lizzie L. Wright and Henry C. Berge, Adm'rs, etc., 239 U. S. 548, 36 Sup. Ct. 185, 60 L. Ed. 431. In that case the deceased was engineer on a road engine. On the way to a distant repair shop it collided with a switch engine returning to the city of Lincoln, Neb., from a transfer track. The collision occurred where the track ran through a deep and curved cut, which considerably shortened the view along the track. One of the allegations of negligence was that the switch engine was being run through the cut at a dangerous rate of speed. The company's defense was that the rules placed upon the intestate the entire burden of taking the requisite precautions to avoid a col-

lision with the switch engine at any place within the yard limits, and that no negligence could be imputed to the company or the switching crew in respect to the speed or control of the switch engine. The court, in an opinion by Mr. Justice Van Devanter, stated that while it doubted whether the rules, rightly construed, permitted the switch engine to proceed at a speed which endangered the safety of the extra which they might have expected through the same cut, that if the rules did so provide that they were unreasonable and void, and it was held that the defendant company was guilty of negligence. We think the case in principle is very much in point.

While there are many cases in which it is a very difficult question to determine whether there is sufficient evidence to submit the question of the defendant's primary negligence to the jury, this is not one of such cases. As appears from the facts hereinbefore related, there can be no doubt that the dense fog existing on the morning of the accident was unprecedented, which rendered the running of trains at a very high speed under these special circumstances more hazardous than usual, and required extra precautions to avoid injuring any workmen who might be on or near the track. The railroad company, by the testimony of its own witnesses, those who were obviously in a situation to know and to appreciate what degree of care and what precautionary measures the exigencies of the situation required to be taken, has supplied the jury a standard by which to test the degree of care and caution that was commensurate with the existing peril and upon which it could reasonably and justly base its verdict. Mr. Robertson, the engineer on the train that struck the deceased, fully realized the perilous situation in which the section crew was placed; for he testified, in effect, that in running through the dense fog that it was necessary to blow the whistle or ring the bell for the purpose of warning any section men in case there were any on the track. Relative to such warnings, he said: "That was the only protection they had in the fog." He also testified that he had given such alarms in passing through the fog at other places on the track, and that he had given the alarm for the crossing near the accident, but, as admitted by counsel for defendant, the verdict of the jury on the question as to whether the alarms were given at the crossing, for the purposes of this case, is conclusive that they were not.

The plaintiff charged in her petition that

the failure of the defendant's employes to sound the whistle or ring the bell at least 80 rods before reaching the highway crossing, about 200 yards west of the place of collision, as required by section 1430, Rev. Laws of 1910, was one element of negligence, and it is urged by the railroad company that this statutory requirement is not for the benefit of the employes or laborers on the track, but that the statute was enacted solely for the benefit of persons on or about the highway. There is a conflict of authority on this question; but we do not think it necessary to decide in this case where the weight of authority is, for the reason that the court did not charge the jury that the failure to blow the whistle or to ring the bell for the highway crossing, as regards the deceased in this case, was negligence. And we do not think that the admission of the testimony of the defendant's failure to blow the whistle or ring the bell at or near the crossing was error, for the reason that this crossing was so close to the place of collision as to preclude the possibility of receiving any testimony on the question of whether alarms were given in approaching and passing through the fog, without such testimony revealing whether such alarms were given at the place required by the statute. Moreover, it was a circumstance bearing on the question of defendant's negligence.

In concluding that the employes of the defendant were guilty of negligence in this case, the jury was not compelled to find that the defendant was negligent in all the particulars claimed. The failure to burn the headlight, in itself, may not have constituted negligence, and the same may be said of each of the separate acts of negligence charged; but certainly the failure to do any one of these things, or to give an alarm in any way, authorized the jury to find that the company was negligent. This point is illustrated in U. P. Ry. Co. v. Hadley, a case very recently decided by the Supreme Court of the United States (246 U. S 330, 38 Sup. Ct. 318, 62 L. Ed.——) as follows:

"On the question of its negligence the defendant undertook to split up the charge into items mentioned in the declaration as constituent elements and to ask a ruling as to each. But the whole may be greater than the sum of its parts, and the court was justified in leaving the general question to the jury if it thought that the defendant should not be allowed to take the bundle apart and break the sticks separately, and if the defendant's conduct, viewed as a whole warranted a finding of neglect. Upon that

point there can be no question. We are not left to the mere happening of the accident. There were block signals working on the road that gave automatic warning of danger to 501, and which it was negligent to pass, seen or unseen, as the engine crew knew where they were and that another train was not far ahead. There was a snow storm raging which the jury might have found to have been of unprecedented violence, and it was open to them to find, in view of the circumstances unnecessary to detail. that the dispatcher ought not to have sent out extra 510 west as he did, and that he was grossly wrong in not allowing 504 to come in, and in not leaving it to 501 to bring back the disabled engine. It might have been found improper to leave the conductor of 501 at Potter. It was superfluous to say more upon this point."

Applying the language of that great court, it can well be said in this case that "defendant's conduct, viewed as a whole, warranted a finding of neglect."

Evidence was offered by the defendant company tending to prove that the deceased was guilty of negligence in not protecting himself and his crew against what he knew to be an approaching train, and it is contended that such negligence was the sole cause of the collision. There is evidence in the record to the effect that the deceased was proceeding with that degree of care an ordinarily prudent person would have exercised under the same or similar circumstances. He knew the train was late, and that he appreciated the dangerous condition caused by the dense fog is evidenced by the fact that he was proceeding very slowly and carefully and listening for the train. He doubtless believed that he was taking sufficient precautions, but others might be of the opinion that he should have removed his car from the track to a place of safety, and not to have proceeded at all until after the passenger train had passed. This is what we think he should have done, and the jury probably considered that he was negligent in this particular; for the size of the verdict indicates that plaintiff's damages were diminished proportionately by the jurors as they were instructed to do in the event they found the deceased's negligence concurred with that of the defendant in causing the injury. Of course, if the evidence clearly proved that the deceased was guilty of negligence, and did not tend to prove that the defendant was guilty of primary negligence, it would be our duty to say, as a matter of law, that the deceased's negligence was the proximate cause of the injury; but in a case where primary negligence is proved, and the evidence tends to show causal connection between such negligence and the injury, and there is also evidence tending to establish negligence on the part of the person injured, this court will not weigh the conflicting testimony and balance the probabilities as to which negligence was the proximate cause of the injury. Oklahoma Coal Co. v. James Corrigan, Jr., 67 Okla. 90, 168 Pac. 1024.

Assuming that the evidence showed and the jury believed the deceased was guilty of negligence, and that his negligence, concurring with that of the defendant, caused the collision, the plaintiff would still be entitled to recover, as the case arises under the federal Employers' Liability Act by the terms of which the plaintiff was entitled to recover under such circumstances, with the damages diminished in proportion to the deceased's negligence. Chicago, R. I. & P. Ry. Co. v. Wright et al., 239 U. S. 548, 36 Sup. Ct. 185, 60 L. Ed. 431.

We cannot say, as a matter of law, that the deceased assumed the risk. Whether the risk was an ordinary risk of the employment, or an extraordinary risk known to the servant, or with knowledge of which he is chargeable, was a question of fact properly submitted to the jury. Chicago, R. I. & P. Ry. Co. v. Ward, 68 Okla. 201, 173 Pac. 212.

The court's instructions to the jury fully and correctly covered this phase of the case. The jury was justified in finding from the evidence that the risk was not one ordinarily incident to the employment of the deceased, but one that arose from the negligence of the company in the particulars hereinbefore discussed, and that the risk was not known to the deceased in time to avoid the collision.

We do not regard this case as close enough to call for a detailed discussion of the authorities cited by counsel for plaintiff in error in their able briefs. These authorities may properly be grouped in three classes: First, cases wherein the record discloses that the defendant was not guilty of any act of omission or commission constituting negligence; second, cases arising prior to the taking effect of the federal Employers' Liability Act, in each of which recovery was denied on the ground that the employe's own negligence contributed to his injuries; and. third, cases in which the injury resulted from a risk ordinarily incident to the employment of the injured party and which was assumed by him. That the cases cited

have no application to the peculiar circumstances surrounding this case is apparent.

There is some evidence in the case to the effect that the deceased could have saved his life, as did three of the men of the crew by abandoning the motorcar and getting out of the way; and one or two witnesses testified that, after he had gotten a few steps away from the motorcar, he came back and endeavored, with the assistance of the Mexican, who was killed, to get it off the track. Realizing the impending peril to the crew and passengers from the on-rushing train, the deceased thus risked and lost his life by remaining at his post and in the discharge of what he rightly conceived to be his duty. As was said by the Supreme Court of Indiana in the case of Pennsylvania Co. v. Roney, 89 Ind. 453, 46 Am. St. Rep. 173, with reference to a similar situation, because of this fact "the law has for him no censure, but has, on the contrary, high commendation and respect." The jury had a right to take into consideration the natural excitement under which he labored at the time, and was authorized to find that he acted, under the circumstances, with that degree of care and prudence any ordinarily prudent person would have exercised under similar circumstances. Pennsylvania Co. v. Langendorf, 48 Ohio St. 316, 28 N. E. 172, 13 L. R. A. 190, 29 Am. St. Rep. 553; Louisville & N. R. Co. v. Orr, 121 Ala. 489, 26 South. 35; Condiff v. Kansas City, Ft. S. & G. R. Co., 45 Kan. 256, 25 Pac. 562; Houston & T. C. Ry. Co. v. Burnett et al., 49 Tex. Civ. App. 244, 108 S. W. 404.

We have read all the evidence in this case with a great deal of care, and have given thought and consideration to all the contentions raised by the railroad company, and are of the opinion that substantial justice has been done. The deceased was a young man, 30 years of age, and left a wife and two small children. The evidence disclosed that he was a provident husband and father, and we think, under all the circumstances in the case, that the verdict for $8,750 was very reasonable indeed.

The judgment is affirmed.

All the Justices concur.