# Batton & Wife *v.* South & North Ala. Railroad Co.

*Action against Railroad Company by Female Passenger, on account of Insulting Conduct of Strangers at Station.*

1. *Duty of railroad company to protect passengers against violence and misconduct.*—Although it is the duty of a railroad company, as a common carrier, to protect its passengers, and especially female passengers, against violence or disorderly conduct on the part of its own agents and servants, other passengers, and strangers, when such violence or misconduct may be reasonably anticipated and prevented; yet it is not liable to an action for damages at the suit of a female passenger, on account of obscene and profane language, indecent exposure of the person, and other disorderly conduct by two or three intruders, who came into the waiting-room at the station while plaintiff was awaiting the arrival of her train, when it is not shown that the company had notice of any facts which justified the expectation of such an outrage.

APPEAL from the Circuit Court of Shelby.
Tried before the Hon. S. H. SPROTT.

The opinion in this case states all the material facts. On all the evidence adduced, which is set out in the bill of exceptions, the court gave a general charge in favor of the defendant, to which the plaintiffs excepted, and which they now assign as error.

WATTS & SON, OLIVER & OLIVER, for appellant.

THOS. G. JONES, *contra*.

SOMERVILLE, J.—The action is one of novel impression for which we nowhere find a precedent. It is a suit for damages against a common carrier—a railroad company—instituted by a passenger for the alleged negligence of the carrier in failing to protect the plaintiff, who was a female, and a single

[Batton & Wife v. South & North Ala. Railroad Co.]

woman at the time of bringing the suit, against the nuisance of indecent language and conduct of certain unknown strangers, who proved disorderly in the presence of the plaintiff, while she was seated in the ladies' waiting-room of a railroad station, belonging to the road line of the defendant company. No assault on the plaintiff is shown, but only vulgar and profane language, and indecent exposure of person, and disorderly conduct, on the part of two or three intruders, who are in no wise connected with the defendant, as servants or agents.

It may be admitted that the plaintiff, Mrs. Batton, who, having married since suit was brought, unites with her husband in this action, was a passenger, inasmuch as she had purchased a ticket on the road, and had entered the waiting-room at the station, not an unreasonable length of time before the passenger train was due at Calera, *en route* for the place of her destination, which is shown to be the city of Birmingham.— *Wabash R. R. Co. v. Rector*, 9 Amer. & Eng. R. R. Cas. 264 ; *Gordon v. Grand St. R. R. Co.*, 40 Barb. (N. Y.) 546.

The nuisance complained of appears to have been an extraordinary occurrence, and one of which no officer or agent of the defendant company is shown to have been at the time cognizant, except a colored employee, or porter, whose duties were confined to looking after the baggage of the passengers.

The question thus presented is, whether it was the duty of the defendant to keep on hand a police force at the station for the protection of passengers against the insults or disorderly violence of strangers. If not, they would be guilty of no negligence which would render them liable in damages for breach of duty. The broad proposition is urged upon us, that it is the duty of railroad companies, when acting as common carriers, to use the utmost care in protecting passengers, and especially female passengers, not only from the violence and rudeness of its own officers and agents, but also of intruders who are strangers. We need not say that there may not be certain circumstances under which the law would impose such a duty. There are many well considered cases which support this view, but none of them fail to impose the qualification, that the wrong or injury done the passenger by such strangers must have been of such a character, and perpetrated under such circumstances, as that it might reasonably have been anticipated, or naturally expected to occur. In *Britton v. Atlanta & Charlotte Railway Co.*, 88 N. C. 536 (18 Amer. & Eng. R. R. Cas. 391; s. c. 43 Amer. Rep. 748), the rule is stated to be, that " the carrier owes to the passenger the duty of protecting him from the violence and assaults of his fellow passengers or intruders, and will be held responsible for his own or his servants' neglect in this particular, when, by the exercise of proper care, the acts

[Batton & Wife v. South & North Ala. Railroad Co.]

of violence might have been foreseen and prevented; and while not required to furnish a police force sufficient to overcome all force, when unexpectedly and suddenly offered, it is his duty to provide ready help, sufficient to protect the passenger from assaults from every quarter which might reasonably be expected to occur, under the circumstances of the case and the condition of the parties." ' We may assume this to be the law for the purpose of this decision, as it seems to be supported by authority. *New Orleans Railroad Co. v. Burke*, 53 Miss. 200; *Pittsburg R. R. Co. v. Hinds*, 53 Penn. St. 512; *Pittsburg R. R. Co. v. Pillow*, 76 Penn. St. 510; *Goddard v. Grand Trunk R. R. Co.* (57 Me. 202), 2 Amer. Rep. 39; Cooley on Torts, 644–645; *Nieto v. Clark*, 1 Clifford. 145; *Putnam v. Broadway R. R. Co.*, 55 N. Y. 108.

In the case of the *Pittsburg Railway Co. v. Hinds*, 53 Penn. 512, *supra*, the plaintiff, who was a passenger, sued the defendant company for an injury received by her at the hands of a mob, who, defying the power of the conductor, entered the cars at a wayside station, and commenced an affray, which resulted in an injury to the plaintiff. It was held not to be the duty of the railroad companies to furnish their trains with a police force adequate to such emergencies; the court observing · that "they are bound to furnish men enough for the ordinary demands of transportation, but they are not bound to anticipate or provide for such an unusual occurrence as that under consideration." "It is one of the accidental risks," said WOODWARD, C. J., "which all who travel must take upon themselves, and it is not reasonable that a passenger should throw it upon the transporter."

It can not be said that this duty of carriers, to take due care for the comfort and safety of passengers, is to be confined to the management of their trains and cars; for the better view is, that it extends also, in a measure, to what has been termed "subsidiary arrangements."—2 Rorer on Railroads, 951.    They are bound to keep their stations in proper repair, and sufficiently lighted, and to provide reasonable accommodations for the passengers who are invited and expected to travel their roads.—*Knight v. Portland R. R. Co.*, 56 Me. 234; *McDonald v. Chicago R. R. Co.*, 26 Iowa, 124.    The measure of duty is ·admitted by all the authorities, however, not to be so great as it is after a passenger has boarded the train, for reasons of a manifest nature.— *Baltimore & Ohio R. R. Co. v. Schwindling.* 8 Amer. & Eng. R. R. Cas. p. 552, *Note.*

We do not think that there is any duty to police stationhouses, with the view of anticipating violence to passengers, which there are no reasonable grounds to expect.    This is as far as the case requires us to go.    The liability of a common

38

carrier, when receiving a passenger at a station for transportation, ought not to be greater than that of an innkeeper, who is never held liable for trespasses committed ordinarily by strangers upon the person of his guests.—2 Kent Com. 593.* There is nothing tending to prove that the company had notice of any facts which justified the expectation of such a wanton and unusual outrage to passengers. Their contract of safe-carriage imposed upon the company no implied obligation to furnish a police force for the protection of passengers against such insults. It is shown neither to be commonly necessary, or customary. It was a risk which was incidental to one's presence anywhere when travelling without a protector, and it was the plaintiff's risk, not the defendant's.

We discover no error in the rulings of the court, and the judgment must be affirmed