## ST. LOUIS & S. F. R. CO. v. FICK.

No. 4180.   Opinion Filed June 1, 1915.

(149 Pac. 1126.)

1. **NEGLIGENCE—Presumption—Proof—Occurrence of Injury.** The mere fact that an injury occurs carries with it no presumption of negligence; it is an affirmative fact for the injured party to establish that the defendant has been guilty of negligence.

2. **CARRIERS—Injury to Passenger—Negligence — Sufficiency of Evidence.** Record examined, and **held** that the evidence adduced at the trial does not reasonably tend to establish negligence on the part of the defendant.

3. **CARRIERS—Passengers—Contract—Duties of Carrier.** Generally, the contract of a carrier is that it will carry the passenger safely and in a proper carriage, and afford him safe and convenient means for entering cars and alighting therefrom; but it does not contract to render him personal service or attention beyond that.

4. **SAME.** The recognized exceptions to the general rule are passengers who, by reason of illness, great age, or other infirmity, are unable to help themselves.

5. **APPEAL AND ERROR—Evidence—Admissibility of Evidence— Res Gestae.** The question of admissibility of statements as part of the res gestae should, in a great measure, be left to the determination of the trial court.

(Syllabus by the Court.)

*Error from District Court, Bryan County;*

*A. H. Ferguson, Judge.*

Action by Daisy Fick against the St. Louis & San Francisco Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with directions to grant new trial.

*W. F. Evans, R. A. Kleinschmidt,* and *E. H. Foster,* for plaintiff in error.

*W. E. Utterback* and *V. B. Hayes,* for defendant in error.

KANE, C. J.   This was an action for damages for personal injuries, commenced by the defendant in error, plaintiff below, against the plaintiff in error, defendant below.   Upon trial to a jury there was a verdict for the plaintiff, upon which judgment was duly entered, to reverse which this proceeding in error was commenced.

For convenience hereafter the parties will be called "plaintiff" and "defendant," respectively, as they were designated in the trial court.

The petition states, in substance, that on the 18th day of March, 1910, the plaintiff was en route from Bennington, Okla., to Paris, Tex., and that it became necessary for her to change cars at defendant's station at Hugo, Okla.; that she purchased a ticket at Hugo to Paris, and upon the arrival of her train she approached the proper place for entering one of the coaches; that in order to enter such coach it was necessary for her to step upon a box provided for that purpose by the defendant, and thence to the first step of the coach; that she was a low and heavy figure, which fact was observable to defendant's agents, whose duty it was to assist her; that upon stepping upon the box provided for such purpose, and just as she was in the act of reaching for the iron bars on the side of the steps and before she could reach the same, and at a time when it was the duty of the porter or conductor, or both, to render her assistance, said box turned over and threw her violently to the platform of the depot, causing her serious injuries; that said box was improperly placed, or was of inferior size for the purpose for which it was used; that a piece of coal or rock or a hole in the platform of the depot caused said box to turn, and that the failure of defendant's agents to properly assist her at the proper time contributed to the injury, and that if she had been properly assisted by the defend-

ant's agents, said box might have been prevented from turning.

The answer of the defendant denied each and every allegation of said petition, and further alleged that if plaintiff sustained the injury complained of, the same was due to the plaintiff's own negligence and carelessness contributing thereto.

Counsel for defendant in their brief present their grounds of error, in effect, as follows: (1) There is no evidence tending to show that plaintiff's injury was the result of negligence on the part of the defendant, and therefore the trial court should have directed a verdict for the defendant; (2) the defendant was under no duty to render personal asisstance to said plaintiff while in the act of boarding its train; (3) the railroad company is only required to exercise ordinary care with regard to the maintenance of its depots, platforms, and approaches thereto; (4) the court erred in admitting evidence of alleged statements of the defendant's train porter subsequent to the injury.

It seems to be conceded that the box used was of the kind and class ordinarily used for the purpose of assisting passengers to enter and alight from passenger coaches, so the only question of fact for consideration is whether a defect in the platform caused the box to turn, or was the injury the result of mere accident? There was abundant testimony tending to show that the defendant's station platform, which was composed of 2½-inch planks, was in an ordinary state of repair. The plaintiff herself, who probably stated the facts in her own favor as strongly as the circumstances would justify, testified that when she attempted to board the train at Hugo, she stepped upon the box, and as she raised her foot to step upon the first step of the coach, the box quivered, as if it was on something, and turned to the left, throwing her backward.

On cross-examination she stated that she did not know the condition of the platform where the box was placed, or whether the platform was in good or bad condition; she did not know what caused the box to quiver, and all she knew about whether there was a hole in the platform was what the porter told her a few minutes after the accident occurred.

It is well settled in this jurisdiction that the mere fact that an injury occurs carries with it no presumption of negligence; it is an affirmative fact for the injured party to establish that the defendant has been guilty of negligence. *St. L. & S. F. R. Co. v. Rushing,* 31 Okla. 231, 120 Pac. 973. After a careful examination of the record before us, we are of the opinion that, aside from the statement made by the train porter, which will be noticed more in detail hereafter, there is not sufficient evidence to establish want of ordinary care on the part of the defendant in keeping its station platform in a reasonably safe condition. The exercise of ordinary care was the only duty the plaintiff could exact from the defendant.

"The requirement of extraordinary care, being founded upon the special risk of human life involved in the business of carrying passengers, is not to be extended to incidents of the business which do not involve such risk, and in which the carrier stands in the same relation to the passenger as do other business men from whom such peculiar care is not required. Hence, while a carrier must use ordinary care to make the means of approach and departure and other accessories safe for the use of passengers, he is not required to use any higher degree of care with reference to these things. Therefore, with regard to platforms, stairs, waiting rooms in a station, the ground surrounding it, and other premises of a railroad company, its obligation to passengers is only one of ordinary care, in common with that of all other occupants of land or buildings inviting persons to enter thereon for compensation, since passengers are not more endangered in such places than they are on similar premises not belonging to a rail-

road company." (Shearman & Redfield on Negligence [5th Ed.] sec. 501; *Falls v. Railroad Co.*, 97 Cal. 114, 31 Pac. 901; *Pennsylvania Co. v. Marion*, 104 Ind. 293, 3 N. E. 874; *Kelly v. Railroad Co.*, 112 N. Y. 443, 20 N. E. 383, 3 L. R. A. 74; *Batton v. Railroad Co.*, 77 Ala. 591, 54 Am. Rep. 80.)

The plaintiff herself does not pretend to know what caused the box to turn over, and there were several eye-witnesses to the accident who afterward testified at the trial to the same effect. In such circumstances, the only reasonable conclusion that can be reached is that the injury resulted from purely accidental causes.

Having reached the conclusion that the plaintiff's injury did not result from any want of ordinary care in keeping the station platform in repair, or from negligence in placing the box, it now becomes necessary to notice the allegations of the petition, to the effect that the plaintiff is of low and heavy build, which facts were known to defendant's agents, whose duty it was to assist her, and that the failure of the defendant's agents to perform their duty in this respect contributed to the fall. The evidence tends to show that plaintiff was a young woman 5 feet 3 inches tall, and weighing 142 pounds. Generally, the contract of a carrier is that it will carry the passenger safely and in a proper carriage, and afford him safe and convenient means for entering cars and alighting therefrom; but it does not contract to render him personal service or attention beyond that. *New Orleans, etc., R. Co. v. Statham*, 42 Miss. 607, 97 Am. Dec. 478; *Yarnell v. Railroad Co.*, 113 Mo. 570, 21 S. W. 1, 18 L. R. A. 599; *St. L., I. M. & S. R. Co. v. Green*, 85 Ark. 117, 107 S. W. 168, 14 L. R. A. (N. S.) 1148; *Raben v. Railroad Co.*, 73 Iowa, 579, 35 N. W. 645, 5 Am. St. Rep. 708; *Selby v. Detroit Ry. Co.*, 122 Mich. 311, 81 N. W. 106.

If there are exceptions to the foregoing general rule, none has been called to our attention which particularly

applies to persons of the size and build of plaintiff. The recognized exceptions to the general rule are passengers who, by reason of illness, great age, or other infirmity, are unable to help themselves. We do not understand that the plaintiff belonged to any of these classes.

The next assignment of error presented for review is the action of the trial court in permitting the plaintiff to testify as to an alleged conversation between herself and the train porter which took place a few minutes after the accident occurred. It seems that immediately after the accident the train porter assisted the plaintiff onto the platform of the coach, which she entered and in which she found a seat; that a few minutes thereafter the porter entered the coach, whereupon the following occurred:

"Q. Mrs. Fick, immediately or soon after the accident, did the porter make any statement to you with reference to the cause of it [the accident]. A. Why, he said he was sorry, but in placing the stool he didn't notice, and placed it over a hole—one end of it. Q. How long was this after the accident, and where were you when he made the statement. A. It was immediately after the accident, he came into the coach and apologized for the accident."

The manifest purpose of this evidence was to establish the allegation of the petition pertaining to the existence of defects in the depot platform and also negligence on the part of the porter in placing the box. It is contended, therefore, that the statement of the porter does not come within the purview of the "verbal act" doctrine; that as the evidence tends to establish the material allegations of the petition, it is objectionable as hearsay, upon the ground that it was but a mere narrative by the porter of a past occurrence, which was not made in the discharge of his duty as such train porter, nor as tending to explain or qualify the act in which he was at the time engaged. On the other hand, counsel for the plaintiff

contend that the statement was admissible as part of the *res gestae.*

A great many authorities are cited by counsel for both plaintiff and defendant purporting to sustain their respective contentions in regard to the admissibility of the porter's statement. However, as every case must be treated upon its own circumstances, we do not find the iteration and reiteration of the well-known rule and its application to many varying and dissimilar sets of facts to be particularly helpful. This court seems to be committed to the doctrine that the admissibility of this class of testimony ought to be left, in a great measure, to the discretion of the trial court. *Smith v. C., R. I. & P. Ry. Co.,* 42 Okla. 577, 142 Pac. 398. And Mr. Wigmore in his work on Evidence (section 1750) is of the opinion that the courts "should, if they are able, lift themselves sensibly to the even greater height of leaving the application of the principle absolutely to the determination of the trial court."

Following the foregoing rule, we probably would not be justified in reversing this cause upon the ground that the trial court abused its discretion in admitting the statement of the train porter. But even assuming that the admission of the statement was proper, in our judgment, it is entitled to very little, if any, probative weight. It was established beyond peradventure that there were no holes in the station platform at the place the box was placed, except the ordinary cracks incident to a plank platform. Mr. R. A. Fooshee, a member of the police force of Hugo, testified that he was standing within eight or ten feet of the plaintiff at the time she got hurt, and witnessed the accident; that after she had fallen he went to the place and examined the box and platform; that the box was in as good condition as could be expected and looked almost new; that the platform was in fairly good

condition, and was constructed of 2x6's, laid east and west, and kept in fairly good shape; in some places there were cracks from a quarter to a half inch, and some were smaller.

Mr. R. M. Connell testified that he was sheriff of Choctaw county, Okla., and resided at Hugo, and saw the platform every day. It was constructed of 2x6 planks, laid close together, the cracks between the planks varying like any other platform.

Witness after witness testified to the same effect. Plaintiff herself did not say there were any holes in the platform, but she says that the platform was "quite full of cracks," which "she should judge were a couple inches wide." This testimony in no way tends to contradict that of the other witnesses, except possibly as to the width of the cracks; and, as it does not pretend to relate to the condition of the platform at the place the box was laid, it does not necessarily tend to contradict the testimony of Mr. Fooshee and the other disinterested witnesses, who testified to the effect that the platform at the place where the accident occurred was in fairly good condition, the cracks therein being such as are ordinarily incident to a plank platform, not being to exceed from one-fourth to one-half inch wide. In such circumstances, no other conclusion could be drawn from the statement of the porter than that he was mistaken in his statement that he placed the box over a hole, or that the hole he referred to was one of the ordinary cracks in the platform. There can be no possible doubt that there were no other holes in the platform at the place where the accident occurred.

Exceptions are taken to some of the instructions given by the court, but as what we have already said will furnish a guide to the court below in instructing the jury upon the points in question upon a subsequent trial, and it being doubtful whether exceptions to the instructions com-

plained of were properly saved, we do not deem it necessary to notice in detail that branch of the case.

For the reasons stated, the judgment is reversed and cause remanded, with directions to grant a new trial.

All the Justices concur.