## ST. LOUIS & S. F. R. CO. v. DOBYNS.

No. 4048.   Opinion Filed May 9, 1916.

(157 Pac. 735.)

1. **NEW TRIAL—Proceedings to Procure—Statement of Exceptions.** Where exceptions to the charge of the court are properly saved and in conformity with the provisions of the statute, it is not necessary to set out the exceptions in separate paragraphs in the motion for a new trial.

2. **CARRIERS—Carriage of Passengers—Duty of Carrier.** The contract of the carrier with a passenger on its trains is that the carrier will transport the passenger safely and in the proper vehicle, and afford him convenient and safe means of entering and alighting from the vehicle, but it does not ordinarily contract to render him personal service or attention beyond that.

3. **SAME.** The recognized exceptions to the general rule are passengers who by reason of illness, great age, or other infirmities are unable to help themselves.

4. **SAME—Question for Jury.** Whether or not a person comes within such excepted class so as to create a duty upon the part of the carrier is ordinarily a question for the jury, the standard of duty being not fixed, but variable and shifting with the circumstances of the case. **Interstate Compress Co. v. Arthur, 53** Okla. 212, 155 Pac. 861, followed.

5. **SAME—Evidence—Review.** Where such evidence is submitted to the jury, and a verdict found against the carrier, and there is no evidence reasonably tending to support the verdict, the same will be set aside.

6. **TRIAL—Instructions—Applicability to Case.** The giving of an instruction upon an issue not raised by the pleadings or the evidence, and which will probably confuse the jury, constitutes prejudicial error.

(Syllabus by Burford, C.)

*Error from District Court, Bryan County;*
*A. H. Ferguson, Judge.*

Action by Lula Dobyns against the St. Louis & San Francisco Railroad Company. Judgment for plaintiff, and defendant brings error. On rehearing. Former opinion

withdrawn, rehearing denied, and cause reversed and re-manded.

*W. F. Evans, R. A. Kleinschmidt,* and *E. H. Foster,* for plaintiff in error.

*W. E. Utterback* and *V. B. Hayes,* for defendant in error.

Opinion by BURFORD, C. This was an action for per-sonal injuries suffered by plaintiff below while a passenger on the defendant railroad, and for convenience the parties will be designated as they appeared in the court below; that is, the defendant in error as plaintiff and the plaintiff in error as defendant.

The material allegations in the petition are: That about the 17th day of July, 1909, the plaintiff, in company with her children, ranging from 13 years to 15 months in age, took passage over the defendant railroad at Benning-ton, Okla., for the purpose of going to Kiowa, Okla.; that it was necessary in order to go to Kiowa that the plaintiff should change cars at Durant, where she took the line of the Missouri, Kansas & Texas Railway to Kiowa; that plaintiff was compelled to carry with her a grip with a change of clothing for the smaller children, together with a basket of provisions, and that when they boarded the train at Bennington the husband of the plaintiff assisted them on the train, but he, not being able to go with them on their journey, advised the conductor and porter of the train that it would be necessary for the wife and children to change cars at Durant, and that it would be impossible for him to accompany them, but that his wife would have to have assistance in making the change; that at this time the plaintiff was pregnant, and had been in that condition for about four months, and her condition was observable,

and by the use of ordinary care should have been known by the employees of the defendant; that on arrival of the train at Durant, when it came to a standstill, plaintiff expected, after the notice which her husband had given the agents of defendant at Bennington, that the porter or conductor would assist her and her small children from the train, and that she waited for some considerable time, and, no one coming to assist her, she had the two older children each take one of the babies, and plaintiff herself took the basket of provisions and grip, the other children being too small to be of any assistance, and upon reaching the platform of the car, with the basket in one hand and the grip in the other, and as she was about to step or had stepped on the first step of the platform leading from the same, and when, on account of her having the grip in one hand and the basket of provisions in the other, she could not brace herself, and while the conductor and porter were both standing at the foot of the steps, she was by some unknown means thrown from the platform of the car to the platform of the station, and that, while falling, the conductor grabbed her by one arm, which action threw her against the depot platform with great force, thereby injuring her severely.

The petition further alleges that the injury to the plaintiff was caused by the negligence and want of care on the part of the defendant's agents, without fault or negligence on her part, in that the defendant's agents were in duty bound to assist the plaintiff from the car, and had they rendered her proper assistance in alighting from the car, she could have gotten out with safety, and that it was the want of this assistance by the defendant's agents which brought about and was the proximate cause of the injury.

To this petition the defendant answered by a general denial and a plea of contributory negligence.

There was a trial to a jury and a verdict returned in favor of the plaintiff, and judgment rendered thereon. After motion for new trial was filed and overruled the defendant brings the cause here for review. At the trial the plaintiff's evidence as to the notice of her condition given the carrier was:

"I heard my husband tell the conductor that his wife and children were going to make a change at Durant, and he would ask him to assist us, as we was unable to get off alone."

Plaintiff testified:

That at Durant she "sat there and waited until almost all the passengers had gotten out, I thought they were all out when I started out, but there was one or two more started after I did, I think."

The undisputed evidence showed that when alighting there were passengers both in front and behind the plaintiff. No employee of the railroad company took her grip or basket, and in going out the children preceded her, and she took the grip and basket, one in each hand. She testified that the basket was of ordinary size and contained sufficient provisions for a lunch at noon for herself and children. She evaded describing the grip or suit case, except that it was of ordinary size, and even under cross-examination on the subject did not give the description, size, or weight of the grip, but stated that it contained some clothes for the children. She testified:

That on reaching the platform "I just started to step from the top step to the next one and became overbalanced, being tired and worn out any way. I was naturally

weak and nervous, and it was too much load for me, and I just naturally became overbalanced, as near as I can tell was the cause of it."

She testified that, had her hands not been occupied, she could and would have caught herself. The conductor was at the foot of the step, and, according to her statement, he had turned his head as she stepped down the step, but had already assisted each of the children, and was there assisting the other passengers. She did not wait for the conductor to observe her, but started down the steps and fell. As she fell the conductor caught her, but did not entirely break the force of her fall, and she struck her hip and knee on the step or on the box placed at the foot thereof. Plaintiff testified that she worked in the field up until the day she left home, and also did housework, and that the value of the work she could have done but for the accident would have been $150 or $200, and that, if she had not been injured, she would have continued to work in the field, and had done so before when in the same condition. Further, in regard to the exact facts of the accident, plaintiff testified:

"Q. That load was too heavy, and you gave way? A. I suppose that is when I fell. I couldn't tell exactly how I came to fall."

And again:

"I want to tell the truth. I don't know what made me fall, only the burden of the load and having no hand to hold with."

And again:

"If any one had pushed me— It could have been somebody pushed me and caused me to lose my balance, but it was done so quick I don't exactly know how it happened."

Under this state of the testimony, eliminating all but that favoring the plaintiff, the carrier insists that there is no proof that there was any duty upon its part to the passengers, or that there was any negligence on its part which was the proximate cause of the injury. Many authorities are cited, but it is not necessary to go beyond the decisions of our own state to ascertain the rules governing the duties and liabilities of the carrier.

It *St. L. & S. F. R. Co. v. Fick,* 47 Okla. 530, 149 Pac. 1126, a case arising out of the same kind of accident, occurring on the lines of the same carrier, and tried in the same court as the instant case, Mr. Chief Justice Kane, speaking for this court, said:

"Generally the contract of a carrier is that it will carry the passenger safely and in a proper carriage, and afford him safe and convenient means for entering cars and alighting therefrom; but it does not contract to render him personal service or attention beyond that. The recognized exceptions to the general rule are passengers who by reason of illness, great age, or other infirmity are unable to help themselves."

See, also, *St. L. & S. F. R. Co. v. Lee,* 37 Okla. 545, 132 Pac. 1072, 46 L. R. A. (N. S.) 357, in which it is held that, as a general rule, and in the absence of some special circumstances requiring it, the carrier is not obliged to station an employee at the entrance of a car for the purpose of assisting the passengers on and off.

In *Interstate Compress Co. v. Arthur,* 53 Okla. 212, 155 Pac. 861, Mr. Justice Hardy, speaking for the court, said:

"What is or is not negligence is ordinarily a question for the jury, and not the court. Where the standard of duty is not fixed, but variable, and shifts with the circum-

stances of the case, it is incapable of being determined
as a matter of law, and, where there is sufficient evidence,
must be submitted to the jury to determine what it is and
whether it has been complied with.   On the other hand,
when the standard is fixed, and when the measure of duty
is defined by law, and is the same under all circumstances,
its omission is negligence, and may be so declared by the
court."

Applying the rules above enunciated to this case, it
will be seen that whether or not an exception to the gen-
eral rule of no duty on the part of the carrier arose or
not must be determined from "the circumstances of the
case."  The standard of duty is not fixed, but whether or
not a duty existed is ordinarily in a case of this sort a
question for the jury.  But, where the evidence is submit-
ted, and a jury finds a verdict against the carrier, and,
considering the evidence most favorable for the plaintiff,
there is none which reasonably tends to support such ver-
dict, it ought not to be sustained.  To our minds the facts
as above detailed show a case of pure accident and are
wholly insufficient to sustain a verdict of negligence.  In
the first place, the plaintiff is very uncertain as to the
cause of her fall.  Although she testified that it was be-
cause of her weakened condition and the weight of the
basket and grip, yet it is clearly evident from her own
testimony that such part thereof as bore upon the very
cause of the accident was a mere speculation as to the
cause of her fall, and was a statement of her own deduc-
tions and conclusions, rather than a statement of fact.
Even this conclusion is so weakened by her own testimony
as to render it valueless.  If, as she testified, she was
strong enough to perform the duties of a field hand the
day before the accident, and would have continued but for
the accident to be strong enough to perform the same

duties, there being no evidence of any particular sickness on the day of the accident, certainly it cannot be said that the carrier was charged with knowledge that after a ride of less than 25 miles, from Bennington to Durant, she was so weakened that she came within the exception of sick or infirm persons to whom the carrier owed a duty, and that she could not with safety carry a basket containing only one day's lunch and a grip whose weight she declined to even estimate. The undisputed testimony shows, as above stated, that the conductor assisted the children in alighting, and that he was there ready to assist her. Although she testified that she waited for the employees of the carrier to come into the car and get her grip, she also testified that she did not expect the conductor to assist her until she reached that portion of the steps where he could reach up and take her grip or assist her. In this connection she testified as follows:

"I just started to step off, thinking he [the conductor] would meet me at the bottom of the steps and assist me off. Q. But you hadn't gotten to the bottom of the steps yet? A. I surely wasn't."

Taking into consideration the plaintiff's testimony in the light of the duty of the employees of the carrier to the other passengers, and in the management of the trains, we think it cannot be said that a duty to go into the coach and carry out plaintiff's grip arose. If the carrier was charged with any knowledge or duty by reason of the statement of the husband, all that he asked was that his wife and children be assisted off the train. The carrier did perform that duty as to the children, and was there ready to perform it for the plaintiff at the point at which, by at least part of her testimony as above set forth, she expected it to be performed. There was nothing in the

statement of the husband to charge the carrier with knowledge of the plaintiff's condition, or that she was weakened or sick, but only what was apparent, that she had several children and two parcels, and, in our judgment, the duty of the carrier did not extend to making any close examination or inspection of the plaintiff's person in order to ascertain her condition, but only to observe what, if anything, was readily apparent. In view of her own testimony, we think that it cannot be said that there is any evidence tending to support the contention that she was so weak or infirm as to raise an obligation on the part of the carrier to give her personal assistance by carrying her grip off the train, and that the failure to do so was negligence. Referring again to her testimony as to the cause of the accident, it will be seen that, even if negligence could be predicated to the carrier, a conclusion that said negligence was the proximate cause of her injury could only be based upon speculation, as she herself does not pretend to know what caused the accident.

In *St. L. & S. F. R. Co. v. Fick, supra,* this court said:

"It is well settled in this jurisdiction that the mere fact that an injury occurs carries with it no presumption of negligence; it is an affirmative fact for the injured party to establish that the defendant has been guilty of negligence."

There are, of course, exceptions to this rule, such as in the case of injury to passengers where a wreck occurs, but they are not applicable to the case at bar, and no exception to the rule is made in the very similar case, *St. L. & S. F. R. Co. v. Fick, supra.*

In *Patton v. T. & P. R. Co.,* 179 U. S. 658, 663, 21 Sup. Ct. 275, 277 (45 L. Ed. 361), the Supreme Court of the United States said:

"Where the testimony leaves the matter uncertain and shows that any one of half a dozen things may have brought about the injury, for some of which the employer is responsible and for some of which he is not, it is not for the jury to guess between these half a dozen causes and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion. If the employee is unable to adduce sufficient evidence to show negligence on the part of the employer, it is only one of the many cases in which the plaintiff fails in his testimony, and no mere sympathy for the unfortunate victim of an accident justifies any departure from settled rules of proof resting upon all plaintiffs."

These rules are supported not only by the decisions of our own, but that of many other courts, and it seems that because of the uncertainty as to the proximate cause of the accident the plaintiff must fail.

There was further error in the trial, in this, that the trial court instructed the jury, among other things, as follows:

"That it is the duty of railroad companies in the operation of their passenger trains to use the highest degree of care consistent with the successful operation of the same to protect their passengers against injury; and, if you find in this case that the railroad company, its agents, servants, or employees, were negligent in the operation of the train, it would be your duty to find for the plaintiff if you find that she was injured as the result of said negligence."

And also:

"Ordinarily there is no obligation on the part of the agents of railroad companies to assist passengers in alighting from their trains if they furnish them reasonably safe places to alight, and are not negligent in starting or stopping their trains."

In the case at bar there was no question as to the negligent operation of trains; there was no question of stopping or starting. The train was standing still when the whole matter occurred. There was no occasion for the instruction on operation of trains, which could only confuse the jury. It will not always do to take expressions from textbooks or from opinions of the courts, which must necessarily be statements of general rules, and apply them to other cases in which all the elements defined in the opinion quoted from do not exist.

In *St. L. & S. F. R. Co. v. A. D. Brewer*, 56 Okla. 682, 156 Pac. 649, it is said:

"The giving of an instruction upon an issue not raised by the pleadings or the evidence, and which will probably tend to confuse the jury, constitutes prejudicial error."

The rule above quoted is but a reiteration of the rules laid down in *C., R. I. & P. R. Co. v. Beatty*, 42 Okla. 528, 141 Pac. 442; *Kingfisher Nat. Bank v. Johnson et al.*, 22 Okla. 228, 98 Pac. 343; *Burgess v. Felix*, 42 Okla. 193, 140 Pac. 1180; *Levy Bros. v. Western Union*, 39 Okla. 416, 135 Pac. 423; and other cases.

The giving of this instruction therefore was prejudicial error.

It is urged, however, that this instruction cannot be considered, for the reason that the exceptions to the charge of the court are not properly taken. It appears from the record that to each paragraph of the charge excepted to by the defendant was written:

"Defendant excepts.        A. H. FERGUSON, *Judge.*"

The objection to considering this is urged by the defendant in error because one of the grounds in the motion for new trial is as follows:

"That the court erred in instructing the jury in instructions 1, 3, 5, and 6, to the material prejudice of the defendants."

Where the exception is properly noted to each paragraph of the charge separately, as required by the statute, it is not necessary in the motion for a new trial to distinguish separately the giving of each paragraph, but it is sufficient if the error is pointed out as set out in the motion for new trial here quoted.

The original opinion in this cause reached the same conclusion as that here announced. However, upon a re-examination of that opinion we believe that the language thereof may be construed as a holding of this court that, as a matter of law, no duty of personal assistance can arise upon the part of the carrier in cases where a woman with several children, and carrying grips and parcels, and who was in a more or less delicate condition, becomes a passenger upon the train of such carrier. It is not to be understood that such a holding may be laid down as a rule of law, but rather that whether or not a duty of personal assistance arises in such cases is, as above stated, to be ordinarily determined as a matter of fact, providing there are sufficient facts to raise a question as to the duty of the carrier, or to sustain a verdict against the carrier if the jury should find one. It is the holding of this court merely that the facts of the case at bar do not justify a finding of such a duty on the part of the carrier.

For the reasons given the former opinion filed in this case is withdrawn, and this opinion substituted therefor, the rehearing is denied, and the cause reversed and remanded for further proceedings not inconsistent with this opinion.

By the Court: It is so ordered.