**SCHAFF, Rec., v. DAUGHERTY, Adm'x.**

No. 15280—Opinion Filed Jan. 27, 1925.

Rehearing Denied Oct. 6, 1925.

**1. Jury—Statutory Duties of Jury Commission—Substantial Compliance.**

Where the jury commission, under sections 3515 and 3516, Comp. Stat. 1921, make a jury list from the various townships of the county in proportion to the population, giving the postoffice address of each name, and head the list with the words "District Court Jury List," and two of said commissioners sign the list and deliver it to the court clerk, who files and records it and places the names in the district court jury box on separate slips of paper, and the list is thereafter certified by leave of court at the first term of the court after said list is made up; the provisions of the statutes are substantially complied with.

**2. Same—Notification of Jury List—Sufficiency—Talesmen.**

Under section 3520, Comp. Stat. 1921, jurors drawn from the box to serve at a term of the court should be notified by registered mail, but if otherwise notified and they report for service, it makes no difference to the litigants as to how they were notified to be present, just so they are present and are the same persons selected from the list to be present, and if for any good reason under section 3518, Comp. Stat. 1921, the number drawn and reporting are insufficient to fill the trial panel, talesmen or special venire may be resorted to.

**3. Master and Servant—Liability for Negligent Death of Railroad Fireman—Sufficiency of Evidence.**

In the wreck of a passenger train, caused by a washout from a rain storm, in which the locomotive turned over, killing the engineer and fireman, and suit is brought against the receiver of the railroad company for damages for the death of fireman, alleging negligence on the part of the conductor and engineer, in running the train without reasonable precaution to guard against dangers after being notified of the rain storm, and further alleging negligence on the part of the section foreman, in failing to inspect his section for dangerous waters and washouts as required by the rules of the company, and there is evidence to support the allegations, it is not error to refuse a requested instruction for judgment in favor of defendant.

**4. Trial—Instructions — Sufficiency as a Whole—Refusal of Requests.**

Where the instructions of the court taken as a whole are sufficient to state clearly to the jury the issues in the case or any particular issue involved and the law applicable, it is not error to refuse to give requested instructions covering the entire case or any particular issue involved, even where the requested instructions are correct.

**5. Master and Servant—Liability for Death of Railroad Fireman—Negligence of Other Servants—Wreck from Washout.**

Where the undisputed facts show that a heavy rain storm had passed over a certain section of the railroad in charge of a section foreman, whose duty it was to guard against washouts by going over his section, day or night, to inspect it during or after heavy rains, and he failed to perform such duty, and the conductor and engineer, in charge of the passenger train running toward said section and before they reached it, were both warned by telegram of the rain storm and ordered to "run very carefully and look out for places liable to wash," and there is evidence tending to show that they disregarded the order and the train wrecked where the rain storm washed out the track on said section, held, the evidence sufficient to show negligence on the part of the defendant as proximate cause of the wreck and consequent death of the fireman.

**6. Trial—Instructions—Correcting Errors.**

Where the court gives the jury an erroneous instruction on any issue or on some matter not in issue, the court may correct the error by another charge in immediate connection therewith explaining the error in such language that the jury is given to understand what the error is and that the law announced is erroneous and has no application to the case on trial.

**7. Master and Servant—Federal Employers' Liability Act—Contributory Negligence—Instruction Approved.**

An instruction where contributory negligence is involved, under the Federal Employers' Liability Act. in the following language, is substantially correct:

"You are further instructed that if you shall find that the deceased was guilty of negligence which contributed to cause his injury, and that the defendant was also guilty of negligence which contributed, with the negligence of the deceased, to cause injury to him, then it is your duty to diminish the amount which, in your opinion, under the evidence, you believe that the plaintiff herein will be entitled to recover by reason of the negligence of the defendant, by an amount in proportion to the amount of negligence attributable to the deceased."

**8. Appeal and Error — Conclusiveness of Verdict—Amount of Damages for Death.**

The amount of damages recoverable in a death case is always a question of fact for the jury, and the verdict of the jury on appeal will not be disturbed unless it appears from the record that the jury was swayed by passion or prejudice against the losing

party, and unless the recovery is so large as to shock the sense of justice.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Pawnee County; Edwin R. McNeill, Judge.

Action by Ella Daugherty, administratrix and personal representative of the estate of Emery Garfield Daugherty, deceased, against Charles E. Schaff, receiver of the Missouri, Kansas & Texas Railway Company, for damages. Judgment for plaintiff, and defendant brings error. Affirmed.

M. D. Green and H. L. Smith, for plaintiff in error.

Tautges & Wilder, Robert J. McDonald, and Thurman S. Hurst, for defendant in error.

THREADGILL, C. The case under consideration is an appeal from the judgment of the district court of Pawnee county in an action wherein the defendant in error, Ella Daugherty, as administratrix of the estate of Emery Garfield Daugherty, deceased, was plaintiff, and defendant in error, Charles E, Schaff, as receiver of the properties of the Missouri, Kansas & Texas Railway Company, was defendant. The parties will be designated herein as they appeared in the trial court.

The undisputed facts in the case are substantially as follows:

On May 21, 1922, defendant's south-bound passenger train number 3, running on the main line of his railroad system from Parsons, Kan., through Oklahoma and into Texas. left Parsons, Kan., about 8 o'clock p. m., and was a night train through Oklahoma. The train was in charge of Winfield Scott Hall, as conductor, and — — Harshfield, as engineer, and plaintiff's deceased as fireman. It was a night of general rain from Kansas to Texas in the territory through which the railway extended. At some places the downpour of rain was greater than at others, but a general rain extended along the entire way. When the train reached Vinita, where it stopped about five minutes. the conductor and engineer received a message from the station in Muskogee to look out for danger, which was as follows:

"C. E.                                     No. 3

"Very hard rain and wind between Pryor and Vinita. Run very careful and look out for places liable to wash. CH 9:50 P. JBM."

The train left Vinita about 10 o'clock, and at a point about four miles from Vinita, and about 1,000 feet south of White Oak creek it was wrecked. The track was washed out or gave way and the engine was derailed and turned over, killing the engineer and fireman. A heavy cloud of wind and rain had passed over that neighborhood before the train reached it and it was raining hard at the time of the wreck; water was all aroun dthe track; the roadbed at this place was lower than at other points in that vicinity, and it was ballasted with chat at the place of the accident instead of crushed rock. There is some conflict in the evidence as to the speed of the train at the time of the wreck. The conductor thought it was running about 15 miles per hour, but other witnesses estimated its speed at from 25 to 40 miles an hour.

The rules of the railroad, governing the operation of trains during rains and storms, in force at the time, were as follows:

"Rule 413. All trains will run slow during and immediately after heavy storms, keeping a close lookout for all places that are liable to wash out or slide."

"Rule 414. In cases of severe storms or violent wind, whether by day or night, section foremen are required to make thorough examination of their sections and see that all is safe. Bridge foremen will also be on hand, ascertain as far as possible the condition of bridges and trestles, and report to the proper officers."

"Rule. 105. Both conductors and enginemen are responsible for the safety of their trains, and under conditions not provided for by the rules, must take every precaution for their protection."

Another rule in force as to the duty of the track or section foreman was as follows:

"Immediately after heavy rains, wind. or snow storms, if of short duration, or during such storms if they continue for a considerable period, foremen must go over their sections, whether day or night, and personally know that all is safe. They must take with them proper danger signals and should they find an unsafe place leave a flagman to protect in the direction opposite to that which they are going and personally protect in the opposite direction as they proceed, continuing to the end of their sections, when, if everything is safe will return to point of trouble, and make speedy repairs, properly protecting by flag in both directions and report to superintendent and roadmaster by wire quickly as possible, giving full particulars, stating whether or not track is impassable, the limit of speed necessary for trains to run and what is required to make permanent repairs."

The section foremen on the section where the accident took place and on the adjoining sections testified that they went to bed early

in the evening, and did not know about the heavy rains, and did not go over their sections in compliance with this rule. The train was an interstate train, and the action is governed by the Federal Employers' Liability Act (U. S. Comp. Stat., secs. 8657-8665).

The deceased at the time of his death was 41 years of age, and had an expectancy of 27.45 years. He left surviving his widow, who was about 40 years of age, and 4 children, two boys and two girls, ages 17, 13, 11, and 7, respectively at the time of the trial in September 1923. The deceased was a strong able-bodied man, weighing about 194 pounds; had been in the employ of the railroad company many years, and was a fireman, drawing a salary from $165 to $200 per month, and his wife and children were wholly dependent upon him for support, and all his earnings were used in their support, with the exception of $35 or $40 per month for his personal expenses. The plaintiff pleaded facts of negligence on the part of the defendant, and asked for $50,000 damages. The defendant pleaded assumption of risk and contributory negligence.

1. The case was tried to a jury September 27, 1923, but before the jury was sworn, defendant interposed a motion to quash the jury panel called into the box to try the cause and the entire array for the reasons: (1) Said panel and no part of same was selected, certified, drawn, summoned, or impaneled according to the provisions of the statutes; (2) the court has no jurisdiction to summon a special jury panel or talesmen until after the petit jury has been legally drawn and summoned, and same is not sufficient.

It appears from the record that the jury commission met on July 3, 1923, and made up a list of 200 jurors to serve on petit jury of district court for the year, and delivered the same to the court clerk, who recorded the same. The list was headed "District Court Jury List" and same was signed by two of the commissioners, but was not certified. The list was not certified till after the trial and during the hearing of the motion for new trial and at that time the certificate was made by one of the jury commissioners. There seems to be no complaint as to the form of this certificate, but it is objected to on the ground that it was too late to cure the failure to certify the list at the time it was made and before it was delivered to the clerk.

Section 3516, Comp. Stat. 1921, provides that the board of jury commissioners shall make two separate certified lists of petit jurors, one for the district court and one for the county court, the one to be delivered to the clerk of the district court, and the other to be delivered to the county judge or clerk of the county court. This law was enacted by the Legislature of 1908, at the time the records of the district court and county court were under two different managements, and there could be no misunderstandings as to which list was for the district court and which for the county court. Since that time the management of the records of both courts has been consolidated, and the court clerk has jurisdiction over the records of both departments. It seems to have been the intention of the Legislature, in providing that the lists be certified, to prevent confusion as to which list was intended for the district court, and which for the county court. In the case at bar the list for the petit jury being headed "District Court Jury List," giving each post-office address and signed by two of the commissioners, and recorded by the court clerk for the district court, and written on separate slips of paper and deposited in the box for the district court petit jury, and, the jury panel for the term in which the case was tried being drawn from this box and certified by leave of court by one of the commissioners, at first term of court after said list was made up, would be a substantial compliance with the statute, and sufficient against a motion to quash the panel for the lack of a certificate.

Defendant, in support of its contention that the failure to certify the list was fatal to its validity, cites the cases of State v. Schumm (Minn. 1891) 50 N. W. 362, and State v. Greenman, 23 Minn. 209, but these authorities are not applicable here for the reason they are based upon a statute which is materially different from our statute.

2. Section 3518, which provides for talesmen and special venires, reads as follows:

"At any time during the term of any court, after the petit jury has been drawn and summoned in the manner herein provided for, when, for the trial of any cause, civil or criminal, the regular panel of jurors shall appear to be insufficient, the jury may be completed from talesmen, or the court may direct that an open venire be issued to the sheriff or other suitable person, for such number of jurors as may be deemed necessary, to be selected from the body of the county, or from such portion of the county as the court may order: Provided that no person shall serve as a talesman oftener than once a year."

Defendant contends that the provisions of this section were violated in obtaining the

eight jurors on the special venire, and its motion should have been sustained for this reason. In support of this contention defendant cites the case of Clinton v. Englebrecht, 80 U. S. 434, 20 L. Ed. 650, but we do not think this case supports the contention; the facts in the case show that the statute was "wholly and purposely disregarded." There was no compliance with the statute. The venire was issued in conformity with the requirement, but was not served in any manner, then an open venire was issued and served and a jury obtained apart from the list made for that purpose.

Section 3520 provides that the regular panel of the petit jury shall be served by the court clerk mailing a copy of the summons by registered mail to the person named in the venire not less than 10 days before the day such juror is to appear for service, but this provision shall not prevent service of special venire or talesmen by sheriff of the county.

Section 3526 provides as follows:

"A substantial compliance with the provisions of this chapter shall be sufficient to prevent the quashing or setting aside of any indictment of a grand jury chosen hereunder, unless the irregularity in drawing, summoning or impaneling of the grand jury resulted in depriving a defendant of some substantial right, but such irregularity must be specifically presented to the court on or before the cause is first set for trial. A substantial compliance with the provisions of this chapter shall be sufficient to prevent the setting aside of any verdict rendered by a jury chosen hereunder, unless the irregularity in drawing and summoning or impaneling the same resulted in depriving a party litigant of some substantial right. Provided, however, that such irregularity must be specifically presented to the court at or before the time the jury is sworn to try the cause."

It has been held by this court as well as the Territorial Supreme Court before statehood, "That the provisions of the statute in regard to the mode of obtaining juries are directory and a substantial compliance with the requirements of the law is sufficient," Middleton v. State, 16 Okla. Cr. 320, 183 Pac. 626, and unless the complaining party can show that he has been prejudiced by the irregularity complained of, there is no statutory right involved. Littrell v. State, 19 Okla. Cr. —, 208 Pac. 1048; Watson v. State, 9 Okla. Cr. 1, 130 Pac. 818.

Under section 3518, talesmen or a special venire may be resorted to when the regular panel is not sufficient for the trial of any case on the trial docket. It makes no difference to litigants as to how the jurors on the regular jury list are notified to be present, just so they are present and have been selected from the list to be present, and if for any reason they are insufficient in number to fill the trial panel, then talesmen or special venire maybe resorted to. 24 Cyc, 228, 35 C. J. 278.

Upon the whole consideration of this point we think the jury was selected, drawn, and impaneled to try the case in substantial compliance with the provisions of the statute.

The panel of jurors from which the greater part of the trial panel was taken consisted of 40 names drawn from the box in the regular way, and notified by postal cards mailed to each of them at their postoffices, and by the sheriff calling them over the phone. The sheriff made a return that eight could not be found. The clerk gave testimony, on the motion to quash, that they were out of the county. They were drawn from the box on September 12, 1923, and notified to report on September 17th. It appears that they all reported but eight, and on September 20, by order of the court, the sheriff summoned from the streets of Pawnee eight men as talesmen, and at least two of the talesmen were taken on the panel to try the case. Defendant contends that the panel drawn from the box were not notified by legal process, registered mail as the statute provided, and the number who appeared for service out of the 40 taken were not legal jurors because not legally notified to appear, and the eight talesmen were not legally placed on the panel because the question of their necessity was not determined by the steps provided by statute.

Defendant calls our attention to the rule governing in cases where the "act of God" is drawn into issue as the proximate cause of the injury as laid down in 1 Corpus Juris, page 1172 et seq., and pages 1174, 1175; also. C., R. I. & P. Ry. Co. v. McKone, 36 Okla. 41, 127 Pac. 488; Gulf, C. & S. F. R. Co. v. Belle. 24 Tex. App. 579, 58 S. W. 614; Smith v. Western R. Co., 91 Ala. 455, 8 South. 754. 324 Am. St. Rep. 929, 11 L. R. A. 619; Cannon v. Hunt. 113 Ga. 501, 38 S. E. 983.

We cannot agree with counsel that defendant was entitled to a peremptory instruction in its favor.

3. This brings us to the merits of the case. The defendant contends that the wreck of the train and the consequent death of the deceased were due to the act of God in the heavy rainfall rather than the negligence of the defendant, and the court should have instructed a verdict in its fav-

or. Defendant then cites the case of C., R. I. & P. Ry. Co. v. Duran, 38 Okla. 719, 134 Pac. 876, in support of this proposition. This case lays down the general rule as to the employer's duty to the employe in the exercise of ordinary care to furnish a safe place to work. First, there must be a duty owing from the employer to the employe; second, a negligent failure to perform that duty by failure to exercise ordinary care; and third, a resulting injury to the employe as the proximate result of such failure on the part of the employer, and the burden of proof is on the employe or his representatives to show all of these things by proper evidence.

The record discloses that in the case at bar the diseased was the fireman and employe of the defendant; that he was in the discharge of his duty in operating the train that wrecked as above stated; that the defendant knew that an unusual storm of rain was falling south of Vinita, where the wreck occurred; that the conductor and engineer of the train had notice by telegrams from Muskogee while the train was at Vinita of the heavy rainfall, and were warned to run very carefully and look out for places liable to wash, and the evidence was of such a character as to warrant the jury in believing that the defendant's employes disregarded this warning and operated the train at its usual rate of speed; that the place where the wreck happened was a low place subject to overflow, and was ballasted less substantially than other parts of the roadbed; that defendant had declared its duty to its employes and to its interstate passengers in certain printed rules as to the duties of the officers in operating trains in stormy weather, and the duties of the employes in looking after the roadbed, to guard against accidents as above stated, is an undisputed fact and the evidence shows that these rules were disregarded on the evening of this accident, and we think that the case cited by the defendant in support of his proposition is in favor of the plaintiff's side of the case, and the court was right in refusing to instruct the jury to return a verdict in favor of the defendant.

4. In the fourth place defendant contends that the court erred in refusing its requested instruction as to duty defendant owed deceased, and giving its instruction as to unprecedented rainfall or act of God. We cannot see where it would serve any useful purpose to discuss these instructions in detail. We think it sufficient to say we have examined the requested instructions and instructions given by the court, and we are of the opinion the instructions given fairly cover the facts of the case and the law applicable thereto, and there was no error in refusing to give the requested instructions. It is a rule too well known to require citation of authority, that where the instructions of the court, taken as whole, are sufficient to state the issues clearly to the jury and the law applicable thereto, it is not error to refuse to give requested instructions even where they are correct.

5. Defendant's fifth proposition is that there was no evidence that the speed of the train or the failure to patrol the track proximately contributed to the wreck and consequent death of deceased.

It is admitted that the section foreman, on this section, did not patrol the track on the night of the rain and storm and accident, and the only excuse given for the failure was that the section foreman went to bed early and at the time he went to bed he did not think it was or would be necessary to go over the track. This was a poor excuse. The rule contemplated watchfulness on his part when the elements were threatening, whether day or night. He knew of the low place in the track where the accident happened; that it was subject to overflow in times of heavy rains; that it was not ballasted with crushed rock and able to withstand rain like the other parts of the track. He knew the rule, he knew it was raining, and that it was a threatening stormy night, and yet, unmindful of the rules as to inspecting his track in just such weather, he goes to bed and leaves his employer's train, loaded with human life, to drive through the downpour and attending darkness and upon the water-soaked and dangerous track without any watchfulness or warning on his part. If he had watched the elements and gone out on his track as was his duty, when he saw that an unusual downpour of rain was falling on his section and ahead of the passenger train that he knew was due from Parsons, Kan., about that time, is it not reasonable to suppose that the tragedy would have been prevented?

Again, when the conductor and engineer of the train received the message of warning that they would run very carefully and look out for places liable to washout on account of the hard rain and wind between Pryor and Vinita. if they had held the train until they had information as to whether or not this part of the road had been inspected under the rules in force, or if they had run very carefully and watched for dangerous places, is it not reasonable to suppose

that the accident would have been averted? All of these were questions of fact for the jury to pass on, and they were warranted from the evidence, as to what was done by the section foreman and the conductor and engineer, in finding the failure of the defendant, through its employes, to perform a well defined duty to the deceased, and by reason of such failure the train was wrecked and the deceased lost his life. Chicago, R. I. & P. Ry. Co. v. Wright, 239 U. S. 548, 60 Law Ed. 431; Sherman & Redfield, Law of Negligence (6th Ed.) p. 460; 33 Cyc. 901: M, K. &. T. R. R. Co. v. Lassater, 115 S. W. 103, 53 Tex. App. 51; Chicago, R. I. & P. Ry. Co. v. Barton 59 Okla. 109, 159 Pac. 250; M., K. & T. R. Co. v. Wolfe, 76 Okla. 195, 184 Pac. 765; St. Louis S. & F. R. Co. v. Jones, 78 Okla. 204, 190 Pac. 385.

6. Defendant's sixth proposition is that the court's instructions as to the Federal Employers' Liability Act were confusing and prejudicial to the defendant.

The court instructed that contributory negligence, under the Federal Employer's Liability Act, would not bar recovery, but only reduce the amount of the damages recoverable, and, in case the defendant had contributed to the injury or death by violating any statute enacted for the safety of the employe, the employe shall not be held to have been guilty of contributory negligence. There was no contention that defendant had violated a federal safety appliance statute, and no issue or testimony to warrant this part of the instruction. This was called to the court's attention at the time and the court conceded the error and instructed the jury as follows:

"You are further instructed that plaintiff is not contending in this case that there has been, on the part of the defendant, any violation of any statute enacted for the safety of employes."

The defendant contends that this did not cure the error and cites the cases of St. Louis & S. F. R. Co. v. Dobyns, 57 Okla. 643. 157 Pac. 735, and Oklahoma Portland Cement Co. v. Brown, 45 Okla. 476, 146 Pac. 6. The facts in these cases are so different from the instant case that we do not think they support defendant's contention. The jury is presumed to be made up of men of ordinary common sense and intelligence, and if the court makes a mistake in giving them an instruction, as in this case, and then gives them another instruction correcting the mistake, and the language of the correction is so plain that a person of ordinary intelligence can understand it, we cannot see any good reason why the error is not cured

and corrected in the understanding of the jury.

Branson's Instructions to Juries, section 95, states the rule as follows:

"An instruction undoubtedly erroneous as stating a principle inapplicable to the case on trial may be cured by another charge in immediate connection therewith that the law which the court has announced, has no application to the case on trial. Where an instruction in an action for personal injuries incorrectly alleges that certain injuries are of a permanent character, the error is cured by a subsequent instruction that the jury should not allow damages for permanent injuries of any kind." 14 R. C. L. 812; 38 Cyc. 1787; State v. Wells (Kan.) 37 Pac. 1005.

7. The defendant further complains that there was no proper instruction on the assumption of risk or contributory negligence, and the trial court erred in instructing the jury permitting a recovery regardless of the effect of contributory negligence.

The court instructed the jury on contributory negligence as follows:

"The contributory negligence as used in these instructions is any want of care on the part of the deceased which contributed to his injuries, and but for which his injuries would not have occurred. That is to say, on the part of the employe, contributory negligence is a failure to use such care for his safety as an ordinarily prudent employe, under similar circumstances, would use."

We think this instruction was sufficient to define and apply the law on this issue and is supported by the case of Chicago, R. I. & P. Ry. Co. v. Barton, 59 Okla. 109, 159 Pac. 250, and Chickasha Cotton Oil Co. v. Brown, 39 Okla. 245, 134 Pac. 850.

Instruction No. 11 of the court, complained of by defendant, is as follows:

"You are instructed in this case that before you can find for the plaintiff it is necessary that you find:

"First. That there existed a duty on the part of the defendant to protect the decedent from injury.

"Second. That the defendant failed to perform that duty.

"Third. That the death of the decedent was the proximate result of the failure to perform said duty.

"When these elements are all brought together they undoubtedly constitute actionable negligence, but the absence of any one of these elements renders the evidence insufficient."

We think this instruction correct.

Defendant also complains of the court's instruction as to contributory negligence under the Federal Employers' Liability Act, which was as follows:

"You are further instructed that if you shall find that the deceased was guilty of negligence which contributed to cause his injury, and that the defendant was also guilty of the negligence which contributed with the negligence of the deceased, to cause injury to him, then it is your duty to diminish the amount which, in your opinion, under the evidence, you believe that the plaintiff herein will be entitled to recover by reason of the negligence of the defendant, by an amount in proportion to the amount of negligence attributable to the deceased."

There was some little evidence tending to show contributory negligence on the part of the deceased; he probably had knowledge of the rules as to the management and operation of trains during rain storms, and there was some evidence tending to show that he knew something of the notice received by the engineer at Vinita before the train reached the place where it was wrecked. And this evidence was the basis of the instruction complained of.

Defendant contends that the instruction was erroneous in not giving the jury the proper rule in reducing the damages in case of contributory negligence, and defendant cites many authorities in support of its contention, but we do not think they support the contention.

The case of Norfolk & W. R. Co. v. Earnest, 229 U. S. 114, 57 L. Ed. 1096, is cited by the defendant. In this case the vice of the instruction was in telling the jury that the measure of reducing plaintiff's damages, in case of contributory negligence, should be in proportion to his negligence as compared with the negligence of the defendand, and the court says: But for the use in the second instance of the additional words, as compared with the negligence of the defendant there would be no room for criticism."

We think this case, which was decided May 26, 1913, supports the correctness of the instruction in the instant case. See, also, St. Louis & S. F. R. Co. v. Brown, 241 U. S. 224, 60 L. Ed. 966, 36 S. Ct. 602; Southern Railway Co. v. Hill (Ga.) 77 S. E. 803; Dickenson v. Granberry, 71 Okla. 9, 174 Pac. 776; Central Railroad Co. v. Skaggs, 240 U. S. 66, 60 Law Ed. 528; Roberts, Federal Liability of Carriers, vol. 1, sections 587, 588.

Defendant further complains that the court refused to give certain instructions requested as to the duty of the deceased in observing the rules and orders of the employer in the operation of the train, and to the effect that he was responsible with other members of his train crew for the safety of the train, and that if he knew or if it was his duty to know of the notice given and received by the engineer to run slow and to look out for dangers, and if he knew or had the opportunity to know whether such order or notice was being complied with, or if he knew or had an opportunity to know about the weather and the condition of the road ahead, they might take all of these facts and circumstances into consideration in determining whether or not he was guilty of contributory negligence.

We think, in view of the evidence as shown by the record before us, that the court committed no error in refusing to give these instructions, as they violated the rule against singling out particular facts and circumstances in advising the jury on the law of contributory negligence.

We have examined the instructions requested by the defendant and the instructions given by the court on all those questions of defendant's sixth proposition, as above stated, and we are of the opinion that the errors complained of by the defendant are not well founded, and the court committed no errors in instructing the jury as to the law on negligence under the Federal Employers' Liability Act and applicable to the issues and facts in the instant case.

8. The defendant's eighth proposition is that the verdict for $15,000 is excessive.

The record discloses that deceased was an able-bodied man, weighing 194 pounds, and of good habits, 41 years of age with a life expectancy of 27 years. He left a widow of about 40 years of age and four children, two boys and two girls, 16, 13, 10 and 6 years of age, respectively. He was a kind husband and father; he had been in the service of the railway company for many years, and was an experienced fireman, drawing a salary of from $165 to $200 per month. His wife and children were wholly dependent upon him for support, and all his earnings went to them except expense money for himself in the sum of about $35 to $40 per month.

The only loss recoverable is pecuniary loss to the widow and children by reason of the wrongful death of the father. Kansas City, M. & O. R. Co. v. Roe, 50 Okla. 105, 150 Pac. 1035; New v. McMillan, 79 Okla. 70, 191 Pac. 160 (cited by defendant)

In this second case the court reduced the damages as found by the verdict from $21,-780 to $14,520. The deceased was about 35 years of age, unskilled and uneducated, and his monthly wages were $55, and the case, while applicable in stating the correct rule as to the nature of the loss, is no authority for determining the verdict in the instant case as excessive. The question as to whether damages are excessive depends upon the facts of the particular case. Chicago, R. I. & P. Ry. Co. v. Fontron Loan & Trust Co., 89 Okla. 87, 214 Pac. 172; Slick Oil Co. v. Coffey, 72 Okla. 32, 177 Pac. 915; City of Sapulpa v. Deason, 81 Okla. 51, 196 Pac. 544; St. Louis & S. F. Ry. Co. v. Hodge, 53 Okla. 427, 157 Pac. 60.

The amount of damages recoverable in a death case is always a question of fact for the jury, and the verdict of the jury will not be disturbed unless it appears from the record that the jury was swayed by passion or prejudice against the losing party, and unless the recovery is so large as to shock the sense of justice. Pioneer Tel. & T. Co. v. Davis, 28 Okla. 783, 116 Pac. 432; Muskogee Electric Traction Co. v. Rye, 38 Okla. 93, 132 Pac. 336; St. Louis & S. F. R. Co. v. Davis, 37 Okla. 340, 132 Pac. 337; Missouri, K. & T. Co. v. West, 38 Okla. 581, 134 Pac. 655; Chicago, R. I. & P. Ry. Co. v. Pitchford, 44 Okla. 197, 143 Pac. 1146; Missouri, O. & G. R. Co. v. Collins, 47 Okla. 761, 150 Pac. 142; Bellevue Gas & Oil Co. v. Carr, 61 Okla. 290, 161 Pac. 203; St. Louis & S. F. R. Co. v. McClain, 63 Okla. 75, 162 Pac. 751.

Under the facts and circumstances in this case we cannot say that the verdict is excessive.

We recommend that the judgment of the trial court be affirmed.